CASE 3.—ACTION BY JAMES B. EDWARD'S ADMR. AGAINST
J. W. LAM FOR CAUSING THE DEATH OF PLAIN-
TIFF'S INTESTATE—February 10.

# Edwards' Admr. v. Lam

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for defendant.  Plaintiff appeals.—Re-
versed.

1. Master and Servant—Injury to Servant—Ventilation of Mines—
Instructions.—Under Ky. Stats., 1909, section 2731, requiring
the operator of every coal mine to maintain for every mine
ventilation of not less than 100 cubic feet of air per minute
per employe, circulated throughout the mine so as to render
harmless the noxious gases therein, etc., an instruction which
makes the operator liable for injuries to an employe through
failure to provide a contrivance  with  power to maintain
"abundant supply of air" in the mine is erroneous for failing
to comply with the statutory requirement, and for leaving
the jury to determine what was an abundant supply of air.

2. Injury to Servant—Evidence—Instructions.—Where, in an ac-
tion for injuries to a coal mine employe by an explosion in
the mine, the evidence showed that blasts should be fired
no closer than five minutes apart, and in regular order be-
ginning next to the point where the air current left the mine;
that the employer had employed a man whose duty it was to
fire the blasts after the miners left; that such man had been
absent for a day or two and still was absent on the day of
the accident; that in his absence the miners fired their
blasts, but there was nothing to show that the mine boss
directed the firing thereof—the court must instruct as to the
duty of the operator in regulating the firing of the blasts.

3. Injury to Servant—Mines—Blasting.—Where an operator of a
coal mine or the mine boss working under him failed to use
ordinary care in regulating the time and manner in which

Edwards' Admr. v. Lam.

the miners should fire their blasts, and negligently allowed them to fire them so as to cause an explosion injuring an employe, the operator was liable for the injuries sustained. .

4. Injury to Servant—Mines—Blasting—Ventilation.—Where an explosion in a coal mine injuring an employe was caused solely by the negligent manner in which the miners fired their blasts, the employer was not liable, but where the employer negligently failed to exercise ordinary care in regulating the time and manner in which the miners should fire their blasts, and to comply with Ky. Stats., 1909, section 2731, requiring the operator of every mine to maintain for each miner a specified amount of ventilation, the employer was responsible if the explosion would not have occurred but for his negligence.

5. Injury to Servant—Mines—Evidence—Admissibility.—In an action for injuries to a coal mine employe occasioned by an explosion in the mine resulting from a want of ventilation, proof that the mine boss or the superintendent the day after the accident went through the mine, and found that the ventilation therein was good, was inadmissible.

6. Obligation of Master—Contracts with Servants—Effect.—The duty of a coal mine-owner, independent of statutory regulation and of the primary duty to furnish a reasonably safe place in which to work, and appliances with which to work, may vary according to the contract between himself and his employes, and the latter may contract to rely on themselves in the manner of doing the work.

7. Fellow Servants—Who Are.—A master who divides his men into grades, putting one over another or one not connected with another in the same service, takes away from the men something of the personal supervision of one over another in a common employment which constitutes them fellow servants, and one put over another is not a fellow servant of the latter.

8. Same.—A contract between a coal mine owner and his employes which stipulates that the employes shall be members of a local organization, and that they shall employ a man to "shoot the mines," and that no one shall be allowed to "shoot out of turn," is valid, and all the employes who are parties to the agreement or who enter employment under it are fellow servants, though they are in different rooms or passages, and not directly associated in their work.

9. Same.—A contract between a coal mine owner and his employes, members of a local organization, stipulating that the employes are to employ one to "shoot the mines," and that

Edwards' Admr. v. Lam.

no one shall be allowed to "shoot out of turn," does not affect the owner's duty to provide the ventilation and other safeguards prescribed by the statutes.

10. Injury to Servant—Evidence—Instructions.—Where, in an action for injuries to a coal mine employe by an explosion, the evidence showed that the explosion was caused by the negligence of the shot firer, and that the contract of employment stipulated that the employes should employ a man to "shoot the mines," the instructions must predicate a finding for the operator on the jury finding that the employes were working under the contract and rules promulgated in accordance with it.

11. Ventilation of Mines—Statutes.—The statute regulating ventilation of coal mines does not contemplate a system of ventilation that will keep the mines free from negligent explosions of powder by the men working in an unskillful manner, but, under normal conditions in the mine, the draft must be such as will afford the minimum of pure air stated in the statute, and, where the miners violate the rules of proper mining, so that the means provided under the statute for sufficient ventilation in proper mining are ineffectual, the mine owner is not civilly liable.

12. Evidence—Similar Facts—Similarity of Conditions.—Where, in an action for injuries to a coal mine employe by an explosion in the mine, resulting from want of ventilation, the operator showed that the conditions existing before the explosion occurred existed on the day following, when an inspector inspected the mine, it was competent for the inspector to testify what the reading of his instrument was as indicating velocity and volume of the current of air passing through the mine, and whether the same provided the men with the quantity of pure air required by the statute, when the mine was operated prudently.

LETCHER R. FOX and WADDELL & DEMPSEY for appellant.

BELCHER & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

James Boyd Edwards was a miner, working in the mine of the defendant, J. W. Lam, and on November 21, 1907, he was fatally burned by an explosion which

occurred in the mine. He died a few days afterward, and this suit was brought by his administratrix to recover for his death on the ground that the statutory provisions for the safety of the mine had not been complied with; it being in effect alleged in the petition that the requirements of the statute as to ventilation had all been violated. An answer was filed controverting the allegations of the petition, and on final hearing there was a verdict and judgment for the defendant. The plaintiff appeals.

Section 2731, Ky. Stats., 1909, among other things, provides: "The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such a manner as to dilute, render harmless and expel the poisonous and noxious gases from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or airway; and all break-throughs or air-ways except those last made near the working-face of the mine, shall be closed up and made air-tight by brattice, trap-doors or otherwise, so that the currents of air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mine are at work; and all mines governed by this statute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances, of such capacity and power as to produce and maintain an abundant supply of air." The plaintiffs introduced proof on the trial to the effect that the explosion occurred about 4:30

p. m.. There was suddenly a sound of a rushing wind like a cyclone, and then a wave of flame swept down the entry, the smoke and flame blowing out of the shaft above ground. That the explosion occurred in this way was not controverted by the evidence, and there was no controversy as to the injury of the deceased, or that he was a miner in the service of the defendant; but there was a sharp controversy as to the cause of the explosion. The proof for the plaintiff was to the effect that the air in the mine was bad that afternoon; that there was a want of ventilation; that two of the entries had been driven more than 60 feet in advance of a break-through or air-way; and that the break-throughs which had been closed up as required by the statute had not been properly closed so as to be airtight or anything like that; that the furnace which was used to produce artificial ventilation had no stack, the stack having been blown down about a month before, and not having been replaced, and that from the want of the stack the furnace had no draft, especially when the wind was blowing as it was that afternoon, and that there was little or no fire in the furnace. On the other hand, the proof for the defendant was to the effect that there was a good fire in the furnace and that the ventilation in the mine was good, and the air good. The defendant also showed that the shots in the mine should be fired about five minutes apart, so that the gases generated by one shot would pass out before another shot was fired, but that on the evening in question the miners had fired off a number of shots immediately in succession and that, when the last shot was fired, the explosion took place, and was what is called a "powder explosion"—that is, it was an explosion caused by gas generated from the shooting off of so much powder in

the mine. On this proof the court gave the jury these instructions:

"(1) The court instructs the jury that if they shall believe from the evidence that on the occasion when plaintiff's intestate was injured the defendant, Lam, caused or permitted the working places in said mine to be driven more than 60 feet from a break-through or air-way, or that the defendant, Lam, on said occasion failed to provide a furnace or other contrivance of such capacity and power as to produce and maintain an abundant supply of air in said mine, and if the jury shall further believe from the evidence that an explosion was caused by the defendant's aforesaid acts or omission, if any, or by any of them, and if the jury shall further believe from the evidence that the said explosion was the direct and natural result of the aforesaid acts or omissions or any of them, if the defendant did or failed to do any of the things above set out, and if the jury shall further believe from the evidence that the plaintiff's intestate was burned in said explosion and his death thereby caused, then, and in that event, the jury should find for the plaintiff such compensatory damages as were thereby caused to decedent's estate, not exceeding $25,000, the amount claimed. And unless the jury shall believe as set out in this instruction, they should find for the defendant.

"(2) If the jury shall believe from the evidence that the explosion in which the deceased was burned was caused solely by the negligent manner, if any, in which his co-laborers or any of them fired their shots in said mine or mined coal therein on said occasion, then, and in that event, the jury should find for the defendant."

Instruction No. 1 is defective, in that it is not as broad as the statute, and does not show that it was

the duty of the defendant to maintain in the mine an amount of ventilation of not less than 100 cubic feet of air per minute for each person employed in it, and circulated and distributed throughout the mine in such a way as to render harmless and expel the noxious gases. This is the statutory definition of the terms "an abundant supply of air," and to omit it from the instructions was to leave the jury to determine what was an abundant supply of air otherwise. The instruction is also defective, in that it does not show that it was the duty of the defendant to close up the air-ways which were not in use by the miners, and there was proof for the plaintiff that the brattices which were put up were defective, and that the air in the mine before the explosion was bad. The instructions were also defective in that they imposed no care on the master in the regulation of the firing of the blasts. The proof shows that the blasts should be fired no closer than five minutes apart, and that they should be fired in regular order beginning next to the point where the air current left the mine, so that the air passing out would take the gas thus generated out with it. The proof also shows that the defendant had employed a man whose duty it was to fire the blasts after the miners all left, but that he was absent on the day in question, and had been absent for a day or two. In his absence, the miners fired their shots on the day in question as they usually did when they fired them. There was also evidence that the mine boss directed the firing of the shot which caused the explosion, or at least told the miner to fire that shot. If the firing of these shots in an improper way would endanger the miners, it was incumbent upon the master to exercise ordinary care in regulating the manner in which they should be fired, and, if he had knowl-

edge that they were being fired by the miners in the
manner in which they were fired on the day in ques-
tion, it was a question for the jury whether his suffer-
ing the shots to be fired in this way was the exercise
of ordinary care on his part. Edwards had only been
in the mine a week. He had nothing to do with the
firing of the shots. It is not shown that he had any
notice of the danger. The miners in one room or en-
try would have little opportunity to know what was
going on in other rooms and entries, and it was in-
cumbent upon the' master to exercise ordinary care
that the work in different rooms should not be so done
as to endanger unnecessarily the workmen in other
rooms. The second instruction is faulty, in this: That
it does not present to the jury the idea that if there
was negligence on the part of the other miners, and
also negligence on the part of the defendant, the de-
fendant would not be excused although the other
miners were negligent, if there was negligence on his
part, and but for this the injury would not have oc-
curred. In lieu of instructions 1 and 2 the court on
another trial, if the evidence is the same, will give
the jury these instructions:

"(1) It was the defendant's duty to provide and
maintain for the mine an amount of ventilation of not
less than 100 cubic feet of air per minute per person
employed therein, circulated and distributed through-
out the mine in such a manner as to dilute and ren-
der harmless and expel the poisonous and noxious
gases from each working place in it. No working
place should be driven more than 60 feet in advance
of a break-through or an air-way. All break-throughs
or air-ways except those last made near the working-
face of the mine should be closed up and made air-
tight by brattice or otherwise, so that the currents of

air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mine are at work; and the mine should be provided with artificial means of producing ventilation such as a forcing fan, furnace, or other contrivance of such capacity and power as to produce and maintain an abundant supply of air. Now, if the jury believe from the evidence that the defendant, Lam, failed to perform these duties or any of them, and by reason thereof and as the natural and proximate result of such failure an explosion occurred in said mine, and thereby the plaintiff's intestate was burned, and his death was thereby caused, they should find for the plaintiff.

"(2) If the defendant or the mine boss working under him failed to use ordinary care in regulating the time and manner in which the miners should fire their shots, and negligently allowed them to fire their shots in such a way as to cause the explosion, when, by the exercise of ordinary care on the part of the defendant or the mine boss, this might have been avoided, and but for this the injury would not have occurred, the jury should find for the plaintiff.

"(3) If the explosion was caused solely by the negligent manner in which the miners or any of them fired their shots on said occasion, the jury should find for the defendant; but, if there was negligence on the part of the defendant as set out in No. 1 or No. 2, and also negligence on the part of the miners as set out above, the defendant is responsible if the explosion would not have occurred but for the negligence on his part.

"(4) Unless there was negligence on the part of the defendant as set out in No. 1 or No. 2, and by reason thereof and as the natural and direct result

of such negligence the explosion occurred, the jury should find for the defendant."

The court allowed the defendant to prove by his mine boss or superintendent that the day after the accident he went through the mine, and the ventilation was good. This proof should not have been admitted. The necessary effect of the explosion was to drive out of the mine the foul air and gas that was in it; for, as the flame and smoke rushed out of the stack, the air from the outside rushed in and took its place. The air the next morning was therefore in a radically different condition from what it was the evening before, and the effectiveness of the furnace would depend upon the amount of fire that was in it. The proof for the plaintiff showed that there was little or no fire in the furnace the evening before, and by having a good fire the next morning conditions might have been different. The condition of the air in the mine the next morning would depend upon not only these things, but upon so many other conditions that the evidence is too uncertain to be proper for the consideration of the jury. The defendant may show, not only what the condition of the ventilation was at the time of the explosion, but what it had been previous to the explosion under similar conditions. But what it was after the explosion was a matter so largely in the control of the defendant that to admit the evidence would be to allow him to make evidence for himself.

We see no other error in the record; but for the reasons given the judgment is reversed, and cause remanded for a new trial.

EXTENDED OPINION ON REHEARING, BY JUDGE O'REAR,
MAY, 1909.

In the transcript of the evidence in this case it appears that a contract between appellee and the local organization of the United Mine Workers of America at the place where appellee's mine is located was admitted to the jury in evidence. But the transcript does not contain this contract. In that way, the import of that agreement escaped attracting the notice that its importance as bearing on the case might justify. It is said that the contract was to this effect: The miners in appellee's service, all of whom were members of the local organization or lodge, were to employ a man to "shoot the mines;" that no one was to be allowed to "shoot out of turn;" that, in short, the control of that part of the operations in the mine relative to the time and manner of shooting down the coal was to be exclusively within the hands of the miners themselves. Conceded that the contract was of such import, we think it materially affects the law of the case. Obviously there is not a liability on the mine owner as to negligence in failing to control the time and manner of shooting in the mines when, by an agreement between the mine owner on the one side and all the miners on the other, the former had not the duty or right to control the matter at all, but it was controlled by the men themselves. The duty of the mine owner, independent of statutory regulation, and that primary duty to furnish a reasonably safe place in which to work, and tools with which to work, may vary according to the contract between him and his laborers. If the latter do not choose to rely upon the former's judgment and skill in certain features of

the work, but prefer to rely upon the prudence of their own members, who are presumably skilled in such work, and whose presence they also in a manner control by requiring that they should be admitted from their union, we perceive no reason why they may not. When the master divides his men into grades, putting one over another, or one not connected with another in the same service, he takes away from the men something of that personal supervision of one over another in a common employment which constitutes them fellow servants. On the other hand, if the employer and laborers all agree that the latter are to be of the same or a common grade, and shall have control themselves of certain features in the work, designed for their better protection, we are unable to see wherein the arrangement is illegal, so long as the public policy and the statutes are not violated. If then Edwards was in truth a member of that organization; if the contract between appellee and the miners left it to the latter to do their own shooting, or to employ another to do it for them, then all miners who were parties to the agreement, or who entered under it, were fellow servants, each looking to the common interest shared by them all rather than to the master for protection against carelessness on the part of his fellows, though they were in different rooms or passages and not directly associated in their work. This, however, could not affect the master's duty to provide the ventilation and other safeguards prescribed by the statute set out in the original opinion in this case. In the event there was such a contract as suggested, the negligence of the shot firer, or of the men themselves in firing the shots, is that of a fellow servant, for which the law does not allow a recovery against the master. It was appellee's theory that such was the cause of the

fatal explosion. As there was evidence to support its contention, it ought to have been submitted to the jury under appropriate instruction, as was done under No. 2, as given by the trial court, except that the court should have left it to the jury to find whether the men were working under that contract and rules promulgated in accord with it. Instruction 2, as directed in the original opinion, should also be given; but, in view of this contract, it should be predicated upon the jury's finding that the miners were not working under the union contract or agreement.

Appellant's theory of the cause of the explosion was that foul air or gas was allowed to accumulate in the rooms and passages of the mine for want of proper ventilation, which ignited when the shots were fired off. Appellee's contention is that the shots were fired in such rapid succession that the system of ventilation could not, and indeed no system could, have carried off the gases generated and released and dust and heat created by the shots; that these accumulating in the passages, being forced almost simultaneously from the various rooms by the shots fired therein, overtaxed the ventilating system, and caused what is termed a "powder explosion." There was evidence to support each theory, and each should have been submitted to the jury. The statute regulating ventilation of mines does not contemplate a system of ventilation that will keep the mines free from negligent explosions of powder by the men working in an unskillful manner, but that, under the normal conditions in the mine, the draft must be such as will afford the minimum of pure air stated in the statute. If the miners violate the rules of proper mining so that the means provided under the statute for sufficient ventilation in proper mining are ineffectual, it certainly

was not the purpose of the Legislature to make the mine owner criminally and civilly liable for that fact. The day after the explosion the State mine inspector visited and inspected the mine, using an anemometer to test the velocity of the current of air circulating in the mine. The original opinion comments upon the effect of the explosion and other changing conditions, upon the state of the air on the following morning, whether it would likely be foul, or charged with lingering gases. It seems to us that what was there said was apposite. But counsel for appellee fear the expression used might be construed to exclude evidence of the test by the mine inspector made the day after the explosion. To the extent that the inspector might testify as to the purity of the air when he tested it we think such testimony for the reasons advanced in the former opinion would be irrelevant. However, if the defendant showed that substantially the same conditions prevailed, affecting the ventilation of the mine, when the inspector tested it, as did when or just before the explosion occurred, it would be competent for the inspector to say what the reading of his instrument was as indicating the velocity or volume of the current of air passing through the mine, and whether that volume and draft were sufficient to provide the mine with the quantity of pure air required by the statute when the mine was being operated prudently and was in a normal condition. If the current of air was such on the morning after the explosion as to afford the requisite volume of pure air called for by the statute, and if the conditions affecting the ventilation were not materially changed since the explosion, then it is evidence that the explosion was not caused by a violation of the statute in failing to provide sufficient ventilation.

Subject to this extension of the opinion in this case, appellee's petition for rehearing is overruled.

On Petition for Rehearing, May 18, 1909. Opinion by Judge Hobson.

We are unable to see that the construction of the statute we have followed, violates any right of the appellant under the Constitution of the United States or any amendment thereto. The right of appeal to this court is the creature of the statute, and the Legislature may annex any condition it sees fit to it. We are also of opinion that a construction of the statute on a mere matter of procedure which has so long been acquiesced in, should not now be departed from. Petition overruled.