CASE 60—ACTION BY RANCE GRIMES AGAINST G. W. CURVIN—March 4.

# Curvin v. Grimes

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Mines and Minerals—Lease—Injuries to Servant of Lessee—Ky. St. 1909, Sec. 2731, requires the owner, agent, or lessee of every coal mine to maintain proper ventilation, etc. Defendant, the owner of a coal mine, leased a part of it, the lessee to hire his own men and operate such part free from the control of defendant, who agreed to ventilate the whole mine; the lessee to do the necessary bratticing. Owing to defective ventilation a dust explosion occurred, and plaintiff, an employe of the lessee, was severely burned. Held, that defendant could not delegate his statutory duty to ventilate the mine, and that he was liable, whether the lessee was an independent contractor or not, and whether or not he failed to do the necessary bratticing.

2.  Mines and Minerals—Lease—Injuries to Servant of Lessee—

Action—Instructions.—Defendant leased part of his coal mine,
agreeing to ventilate the whole thereof.  In an action by an
employe of the lessee for injuries through an explosion of coal
dust, the court instructed that if the injury was caused by
defendant's failure to ventilate he was responsible, but that if
it was caused in any other manner he was not liable, and that
if the injury resulted from the use by plaintiff of an unnec-
essary charge of powder, or from an explosion of powder care-
lessly left by plaintiff or other miners, and not from an ex-
plosion of dangerous gases which had been allowed to accu-
mulate in the mine by defendant, the latter was not liable.
Held, that the instructions were as favorable to defendant as
the law justified.

3. Damages—Personal    Injuries—Excessive    Damages—Where
plaintiff, a coal miner, was severely burned by flames from a
dust explosion in defendant's mine, a verdict for $1,500 was
not excessive

D K RAWLINGS for appellant

E H JOHNSON and SAM C HARDIN for appellee

(No briefs in the record).

OPINION OF THE COURT BY JUDGE BARKER—Affirm-
ing.

The appellant, G. W. Curvin, was the owner of a
coal mine in Laurel county, Ky., which, during the
fall of 1905, he was operating.  About that time he
entered into an arrangement with Tilford Cornelius by
which he leased to the latter a part of the mine.  Un-
der the terms of this lease Cornelius was to mine the
coal within the area set out in the contract, and deliver
it on mining cars in the main entry at which point
Curvin, by his employes, was to take charge of it,
haul it to the tipple, and pay to Cornelius 72 cents
per ton, mine run.  Cornelius was to hire his own
men and operate his part of the mine free from the
control of Curvin, except that the owner reserved a

general supervision for the purpose of seeing that the mining was done in such a manner as not to ruin the property, or, as the witnesses say in the evidence, to see that he "didn't butcher it.' The lessor and lessee also had a working contract by which neither was to hire the men of the other without the consent of the latter, and Cornelius agreed that he would not employ any person as miner who was objectionable to Curvin. This, it is explained in the evidence, was to prevent the introduction of professional agitators into the mining camp. Curvin was to keep account of the coal, and out of the amount coming to Cornelius was to pay the miners of the latter. But this was done for the accommodation of Cornelius. The uniform price for mining coal in the district was fixed by the union scale at 56 cents per ton, mine run. On the part of Curvin it was agreed that he should ventilate the whole of the mine, including that operated by Cornelius; and this was to be done by means of a fire kept going in a furnace in the mine. Curvin was also to furnish Cornelius with material with which to brattice the break-throughs or entries from the air passages to the rooms of the mine, and Cornelius, under the agreement, was to do the bratticing, so as to force the current along the airways to the furthest parts of the mine where the men were at work.

The appellee, Rance Grimes, was in the employ of Cornelius as a miner. While making what is called a "shot," by which the coal is knocked down by the explosion of gunpowder, there occurred what is called by the witnesses a "dust explosion," by which the whole mine around about where Grimes was at work was filled with flame, very much the same as if the mine had been filled with inflammable gas, which

had been ignited. These flames burned the appellee very severely, and to recover damages for the resulting injuries he instituted this action against appellant, Curvin, the operator of the mine, claiming that the explosion was caused by his negligence in not properly ventilated the mine, and thereby allowing it to become dry and filled with an inpalpable dust, which exploded under the operation of the ordinary blasting done for the purpose of knocking down the coal. The defendant denied all of the material allegations of the petition, and thus completed the issues between the parties litigant. A trial by a jury resulted in a verdict in favor of the plaintiff for the sum of $1,500, and of this verdict, and the judgment predicated thereon, the appellant, Curvin, now complains.

Without going into the evidence minutely, it is sufficient to say that there was an abundance of testimony tending to establish the theory of appellee that his injuries were caused by the dust explosion, and that this was the result of the mine having become dry owing to defective ventilation. On the part of appellant it was contended that Cornelius was an independent contractor, and, Grimes being his employe, appellant owed him no duty, except, perhaps, to keep the fire going in the furnace; that under the contract between appellant and Cornelius the latter was to do the bratticing, and, if the bad ventilation was due to the failure of Cornelius to properly attend to the bratticing, Grimes must look to his immediate employer, and not to the owner of the mine, for remuneration for his injuries. For all the purposes of this case, appellant's theory as to Cornelius being an independent contractor may be conceded to be true; but

it does not follow that Curvin is not responsible for the injuries sustained by appellee. On the contrary, we are clearly of opinion that, if the injuries which Grimes received were caused by the improper ventilation of the mine, then Curvin is responsible, whether Cornelius, the employer of Grimes, was an independent contractor or not. Undoubtedly it was competent for Curvin and Cornelius to make any contract they pleased by which the coal was to be mined and delivered to the former, and we think that there is much in the evidence to establish Curvin's theory as to the terms of the contract existing between him and Cornelius; but it must not be overlooked that there are statutory duties imposed upon the operator of a mine, which he can neither neglect nor delegate to others without incurring liability for damages resulting from negligence.

Section 2731, Ky. St., relating to the ventilation of mines in this state, is in part as follows: "The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such a manner as to dilute, render harmless, and expel the poisonous and noxious gases from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or airway; and all break-throughs of airways, except those last made near the working face of the mine, shall be closed up and made air-tight by brattice, trapdoors or otherwise, so that the currents of air in circulation in the mine may

sweep to the interior of the excavations where the persons employed in the mines are at work; and all mines governed by this statute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances, of such capacity and power as to produce and maintain an abundant supply of air.''

The evidence shows, without contradiction, that Curvin was in a general sense the operator of the whole mine in which the accident involved herein occurred. He could not, therefore, escape the duty imposed by the statute to see that this mine was ventilated in the manner pointed out, and he could not escape the responsibility for his failure so to do by saying that he had contracted with Cornelius to attend to the necessary bratticing, and that the latter had failed in his duty in regard to it. The men who were working in this mine, whether for Curvin or for Cornelius, saw that ventilation was in the hands and under the operation of Curvin, and they had a right to rely upon his faithful compliance with all the wise provisions of the statute enacted for their safety. Curvin could not, by a verbal contract locked up in the secret bosoms of the parties to it, shift the responsibility for the proper ventilation of the mine to other shoulders. Undoubtedly, if appellee's injuries had resulted from negligence on the part of Cornelius to perform some duty owed by him to his employes, Curvin would not have been liable. But we have a different case before us. Here the mine was laid out as a whole, and had been operated as such. Appellant, by a contract with Cornelius, gave him a certain part of the mine in which to operate as an independent contractor so far as mining the coal was con-

cerned; but over the mine as a whole Curvin reserved a general supervision and retained the duties of ventilation. He cannot, therefore, be heard to say that Cornelius failed to discharge a part of the duty which the statute cast upon him as the operator of the mine.

This was the view of the learned trial judge, and in his instructions he told the jury that if the injury which plaintiff received was caused by the failure of Curvin to properly ventilate the mine he was responsible, but if the injury received by appellee was caused in any other manner they should find for the defendant; and he especially instructed them that if the appellee's injury .was the result of an unnecessary and unusual charge of powder used in the course of mining by the plaintiff, or the result of an explosion of powder carelessly left in the entries of the mine by the plaintiff or the other miners, and exploded by the firing of shots in the coal, and not the result of an explosion of dangerous and inflammable gases which had been permitted and allowed to accumulate in the mine by the defendant, the law was for the defendant. It seems to us that the instructions given by the court were fully as favorable to defendant as the law justified, and that he has no just reason to complain on this score. There was nothing in the evidence to justify the court to instruct the jury that if the defendant knew of the danger existing in the mine, and, so knowing, remained at work therein, he could not recover. The evidence affirmatively shows that Grimes did not know of the danger. It is true, some weeks before the accident by which he was hurt, there had been some sort of explosion in the mine, which frightened Grimes, and he imme-

diately left Cornelius' work and took employment on Curvin's side of the mine; but it is shown that his fears were allayed and the explosion explained in such a manner as to entirely reassure him. The truth is the explosion which caused the injury seems to have been one of those obscure occurrences which the miners do not well understand, although they know that such accidents sometimes happen. The record before use abundantly shows the ignorance of the miners as to the cause of the explosion in question, although they in the main agree that if the mine had been kept damp by proper ventilation the explosion would not have occurred.

We do not mean by what we have said in this case to intimate that we adopt unqualifiedly the theory of appellee. All that we can say is that there was evidence to sustain it; and while it would be easy to believe that the explosion in question was the result of an ill-judged shot, igniting loose powder which had been carelessly scattered in the mine, still both theories were fairly submitted to the jury, and they found for the appellee.

We do not think the verdict is excessive. This was a matter of which the jury were properly the judges; and, if we were less certain that the verdict was reasonable than we now feel, we would not consider ourselves authorized to reverse the judgment alone because of the amount awarded appellee.

Judgment affirmed.

Petition for rehearing by appellant overruled.