## Stearns Coal Company v. McPherson.

(Decided October 11, 1911.)

### Appeal from Whitley Circuit Court.

1. Mines and Mining—Injury to Miner—Action by for Injuries—Defense Interposed.—In an action for injuries sustained while at work in a coal mine, by coming into contact with poisonous gases, the defense was that the mine was leased to M. who had employed appellee to work in the mine. Held, that it appearing that appellee was injured by poisonous gases in the mine, the presence

of which was caused by the failure of appellant, or those in charge of the mine, to obey the statutory regulations for proper ventilation, the trial court did not err in refusing to allow the lease to M. to be read to the jury, and did not err in refusing to give the peremptory instruction asked for by appellant.

2. Same—Contributory Negligence.—While there was a contrariety of evidence as to whether appellee was guilty of contributory negligence in resuming his work in the mine when he did, it was such as to authorize the submission of the case to the jury.

J. N. SHARP for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, suing as an infant, and by his father as next friend, recovered a verdict and judgment against appellant in the court below for $1,000 damages, resulting from injuries he sustained by inhaling poisonous gases in its mine while engaged in the work of mining coal therein. Though but about 19 years of age when thus injured, appellee became twenty-one between the institution of the action and the trial thereof.

While numerous grounds were filed in the court below in support of appellant's motion for a new trial, only two of them are urged on this appeal for a reversal of the judgment, viz.: That the trial court erred in refusing the peremptory instruction in its behalf asked after the introduction of appellee's evidence, and again at the close of the evidence; and also erred in not permitting it to introduce as evidence in its behalf on the trial a certain writing whereby it claimed to have leased to one J. M. McGuffy, the coal mine in which appellee was injured.

Appellant's claim of right to the peremptory instruction rests upon two grounds. 1st., That as appellee was employed by McGuffy, his alleged control of the mine under the lease from appellant, exonerated it from liability for appellee's injuries and fixed such liability, if any, upon McGuffy. 2nd., That appellee in the matter of receiving his injuries was himself guilty of contributory negligence, but for which he would not have been injured.

The lease upon which appellant rests its first contention, on account of its unusual length, is not copied in the opinion, but it is sufficient to say that its provisions manifest a contract in substance and meaning like the

one relied on by the appellant mine owner in Interstate Coal Co. v. Baxavenie, 144 Ky., 172, to defeat a recovery of damages by a miner injured in its mine. In the opinion in that case we said:

"Appellant earnestly contends that, because appellee and those working with him were not employed by appellant, but were engaged by McCloud, who had contracted with appellant to do the work at so much per yard and who paid and discharged the men under him, and that under the contract McCloud and the other contractors were to brattice and look after the furnace, appellant was, therefore, under no legal duty to comply with the statute so far as such employes were concerned. It is admitted, however, that appellant was the owner of the mine and had control over it. The statute makes it the legal duty of such owner to comply with its terms. That being true, the owner cannot shift the responsibility imposed by the statute, by such a contract as that disclosed by the record. If such were the law, the whole purpose of the statute would be defeated. Instead of placing the liability upon the parties having the power and means to safeguard the life of the miner, the burden would rest upon irresponsible parties whose negligence would leave the miner without adequate means of redress." (Edwards v. Lane, 132 Ky., 32; Curvin v. Grimes, 132 Ky., 555.)

Appellant has not been incorporated, but it appears to be a joint stock company, or association, organized in a State other than Kentucky, but section 208 of Kentucky's Constitution declares that "The word corporation as used in this Constitution shall embrace joint stock companies and associations."

With respect, therefore, to the Constitution and laws of this State, appellant is on the footing of a corporation. It has the franchise to exist in this State, acquire mining property, and conduct the business of mining, and may, for the purposes mentioned in section 815, Kentucky Statutes, exercise the right of eminent domain.

Appellant's status being that of a corporation, it is subject to the restrictions contained in section 203, Constitution, which provides:

"No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor,

lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges.''

We are aware that cases may be found which hold that a public utility corporation, like a railroad company, may by legislative authority, lease its railroad, property and franchise to another railroad company, so as to give the lessee absolute control thereof, and thereby relieve itself of liability for the negligence of the lessee in operating the railroad, resulting in injury to a servant of the lessee. (Harper v. Railroad Co., 90 Ky., 359; 5th Thompson Corporations, Sec. 6293.) But the instant case does not come within the rule announced by these authorities. Appellant was without legislative authority to lease its franchise or property, but if it possessed such authority and appellee was injured, as claimed, by appellant's negligence, or that of its lessee, in failing to comply with the statutory regulations as to operating the mine, the covenant of the lease stipulating that it should be exempt from liability for such an injury, would be of no legal effect, however strongly the language of the lease might express the intention of the lessor to invest the lessee with the absolute control of the leased premises. As a matter of fact the lease to McGuffy did not give him control of the leased premises exclusive of the lessor. But if it had done so, appellant could not by reason thereof escape liability in this case; for according to the averments of the petition, and at least some of the evidence, appellee was injured by noxious or poisonous gases in the mine, the presence of which was caused by the failure of appellant, or those in charge of the mine, to obey the statutory regulations for its proper ventilation. So in this view of the matter, the trial court in refusing to allow the lease from appellant to McGuffy to be read to the jury did not err.

In Curvin v. Grimes, 132 Ky., 555, the appellant, a mine owner, was sued by the appellee, a miner, for injuries sustained in an explosion of gas in the mine, caused by improper ventilation. The mine owner attempted to escape liability by alleging and showing that the mine, or that part of it in which appellee was injured, was being operated by an independent contractor, or lessee, by whom appellee was employed to work therein. Upon these facts we held that the mine owner could not delegate his statutory duty to ventilate the mine,

and that he was liable in damages to the appellee, whether the lessee was an independent contractor or not.

The humane doctrine announced in this case and in that of Interstate Coal Co. v. Baxavenie, should be adhered to, as it arises out of the primary obligation of the master to provide a reasonably safe place for the servant to work and reasonably safe appliances and tools to perform the work. Its enforcement is indispensably necessary to the protection of the lives of those who toil in the mines, and can result in no injustice to the mine owners.

The manner of ventilating mines in this State is regulated by statute. These regulations, as applicable to the present case, are found in section 2731, Kentucky Statutes, which provides:

"The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such manner as to dilute, render harmless, and expel the poisonous and noxious gases from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or air-way, and all break-throughs or air-ways except those last made near the working place of the mine, shall be closed up or made air-tight by brattice, trap doors or otherwise, so that the currents of air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mines are at work; and all mines governed by this statute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances of such capacity and power as to produce and maintain an abundant supply of air. All mines generating fire damp shall be kept free from standing gas, and every working place shall be carefully examined every morning with a safety lamp, by a competent person or persons, before any of the workmen are allowed to enter the mine. And at every mine operated by a shaft there shall be provided an approved safety catch, and a sufficient cover-overhead, on all cages used for lowering and hoist-

ing persons, and at the top of every shaft a safety gate shall be provided, and an adequate brake shall be attached to every drum, or machine used in lowering and raising persons in all shafts and slopes.''

The evidence appearing in the record shows that at the time appellee received the injuries complained of he was unskilled in the work of mining; that he and a companion were employed by McGuffy in the afternoon of the day they sought employment of him; and that they were, by his direction, taken into the mine that afternoon and put to work in a room near the main entry, situated about 600 feet from the mouth of the mine; and that they mined the coal by blasting and the use of picks. In order to do the blasting they had first to drill holes in the coal, after which these holes were filled with powder, properly tampered and shot off by means of a fuse of sufficient length to enable them, after igniting it, to reach a place of safety in the mine before the explosion occurred. It further appears from the evidence that appellee and his companion continued at the work of drilling holes preparatory to blasting the coal, until about 4:20 o'clock, p. m., which was the time of shooting of all blasts in the mine and also for the stopping of work in the mine for the day. They then left the mine as did all the other miners employed therein.

There seemed to be no rule requiring persons employed in the mine to return to work therein after 4:20 o'clock, p. m., and it was not customary to operate the furnace used for ventilating the mine later than that time. But, according to the evidence it was sometimes done, and the miners permitted to resume work in the mine after 4:20 p. m. Appellee and his companion were among those who expressed to McGuffy the wish to return to their work in the mine after 4:20 p. m., that day. McGuffy permitted them to do so, and about 6 o'clock, p. m., they re-entered the mine and resumed the work of drilling. At that time the furnace for providing the mine with ventilation was not in operation, and soon after appellee and his companion began the work of drilling they were seized with vertigo, violent pains in the head and body, and experienced a feeling of suffocation. Beginning to fear that they were in danger of losing their lives appellee and his companion, with much difficulty, made their way to the mouth of the mine, upon reaching which, appellee fell to the ground and lost con-

sciousness; in which condition he remained until the following morning when he was removed in a vehicle, by a brother, to his father's residence.

It was clearly shown by the evidence that appellee was overcome by foul and poisonous gases that then filled the mine. It is equally clear from the evidence that his illness came near producing paralysis of his body; that it gave him much suffering and incapacitated him for labor for as much as two months. Although no permanent impairment of his ability to earn money was shown, if appellee was entitled to recover at all, it cannot be said that $1,000, the amount recovered, more than compensated him for the mental and physical suffering he sustained, to say nothing of his loss of time; and we do not understand that appellant complains of the amount of the verdict. It insists, however, that appellee's injuries were caused by his own negligence, because in entering the mine and going to work after the furnace had been shut down he knew that the mine was unprovided with proper ventilation and of the danger to be apprehended from the poisonous gases therein. Indeed, McGuffy and one other witness introduced for appellant, testified that they warned appellee of the danger of entering the mine under the circumstances and that he persisted in doing so, saying "he had but one time to die." On the other hand, appellee and his companion denied that he received such warning, or that he made the statement attributed to him. They admitted their knowledge of the furnace's not being in operation when they entered the mine, but denied knowledge of the danger attending their attempt to resume work therein; both testifying that McGuffy, appellant's lessee or mine foreman, gave them permission to re-enter the mine and resume work, and assured them that he would at once have the furnace started. McGuffy denied that he promised to start the furnace, but did not deny that he knew they returned to their work in the mine.

It will thus be seen that there was a contrariety of evidence as to whether appellee was guilty of contributory negligence in resuming work in the mine. The danger attending his act in doing so was manifest to McGuffy, but was claimed by appellee to be unknown to him, an inexperienced miner. If it was not known to him, or if he re-entered the mine relying upon a promise of McGuffy that the furnace which the statute required

to be operated for the ventilation of the mine, should be at once started, and McGuffy's failure to start the furnace caused his injuries, then McGuffy's act in failing to start the furnace was negligence and the proximate cause of the injuries.

It is obvious that the case should have gone to the jury; therefore, appellant was not entitled to the peremptory instructions either upon the ground that it was exempt from liability for appellee's injuries because of the leasing of the mine to McGuffy, or because the evidence conclusively showed that appellee's injuries were caused by his own negligence. We have not commented on the evidence adduced by appellee as to the failure of appellant to properly brattice the mine or provide it with the necessary air-ways and break-throughs, as it is conceded that the presence in the mine of the powder smoke resulting from the numerous blasts made therein at 4:20 o'clock, p. m., and the fact that the furnace was not in operation, were sufficient to have made the air of the mine foul and dangerous at the time appellee was injured.

It is not complained by appellant that the jury were not properly instructed, if the case should have been submitted to them, and we find that the instructions were substantially correct.

In our opinion the judgment should be and it is affirmed.