## Interstate Coal Co. v. Addington.

### (Decided June 18, 1912.)

### Appeal from Knox Circuit Court.

Mines and Mining—Action for Personal Injuries—Opinion in Similar Case.—For an examination of the questions involved in this case, see Interstate Coal Co. v. Baxavenie, 144 Ky., 172. As to the contention that the verdict is excessive, the evidence examined and held that a verdict in appellee's behalf for $2,500.00 is not too large.

BLACK, BLACK and GOLDEN & OWENS for appellant.

J. M. ROBERSON for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This appeal is from a judgment of $2,500.00 recovered by appellee for ·personal injuries received while working in appellant's mine. This case is similar to the case of Interstate Coal Co. v. Baxavenie, 144 Ky., 172. Baxavenie and appellee herein were hurt by the same explosion. Appellee was at work in the first right entry of the mine when he was injured and Baxavenie was working in the first right air course, which ran parallel with the first right entry. The company defended both cases upon the ground that the explosion was caused by some blow out shots and the discharge of some dynamite. Appellee contended that appellant failed to keep the furnace in good condition and working and to properly brattice the break throughs, which allowed gases and coal dust to accumulate in the mine. The company also defended both cases on the ground that section 2731 of the Kentucky Statutes did not apply, as the statute expressly exempted it. It was further contended by the company that as Baxavenie was working in the

entry under an independent contractor he could not recover and that as Addington was working under a contract in which it was stipulated that he would brattice and keep in repair the proper openings in the mine so as to force the dust and gases out and furnish the mine with pure air, he could not recover.    These questions were all considered in the case of Interstate Coal Co. v. Baxavenie, supra, and as the evidence is substantially the same in this case as in that we will not consider them here, except to say that as Baxavenie was an employe of McCloud, who it was alleged had the contract to extend the first right air course, and Addington had a contract to extend the first right entry, but this is the only difference in their relation to the company.

Both the statute referred to and the Common Law required the company to make and keep their mine in a reasonably safe condition to labor in, and, as the court decided, it could not escape this duty in the Baxavenie case by contracting with McCloud to do it; it is a duty that cannot be delegated.

In the case of Phisterer v. Peter & Co., 117 Ky., 501, this court said:

"He (the servant) has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others that does not change the measure of obligation to the employe, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects."

. As stated, in the Baxavenie case the company delegated to McCloud by contract, the duty of keeping the mine reasonably safe, and it claims in this case that this was Addington's duty under his contract with it. This was denied and considerable evidence was introduced upon the point by both parties, and the court told the jury in substance, that if Addington made such a contract with appellant and failed to perform it properly, they would find for the company.    And this instruction was as favorable to appellant as it had a right to ask.

The instruction criticised in the Baxavenie case was not given in this case. Appellant also objected to instructions numbers one and two.    Instruction No. 1 was approved in the Baxavenie case and instruction No. 2 was simply the converse of No. 1 in which the court told

the jury to find for the defendant under certain circumstances.

The only other question necessary for determination is the amount of the verdict. Appellant strenuously contends that it is excessive and that the case should be reversed for that reason. In the case of L. & N. R. R. Co. v. Mitchell, 87 Ky., 327, this court said:

"The amount allowed seems large. It is so. The fact, however, that it appears high to us does not authorize a reversal. We are not acting as a jury, and it is only when it is glaringly excessive, and appears at first blush to have resulted from passion and prejudice, that we can interfere. The power should be sparingly exercised, and only in extreme cases. This is the policy of the law, and reasonably and necessarily so. It is difficult, indeed impossible, to measure with mathematical certainty the extent of some of the elements of compensatory damages. The law has "confided the duty to the opinion of a jury as the best means of arriving at their extent even approximately, and every verdict should be regarded prima facie as the result of the exercise of an honest judgment upon their part. Any other rule would soon burden this court with numberless appeals upon this ground."

Appellee was forty years of age at the time he was injured, was strong and healthy. According to his testimony, he was rendered unconscious by the explosion, his legs were bruised, his hands cut and different parts of his body hurt, the most serious injury being a place about four inches wide extending from one side to the other across his back. This place was blue and had troubled him from the day of his injury until the time of the trial. He was confined to his room for some time and at the time of the trial had never been able to do hard labor. He testified that whenever he undertook to lift anything heavy his back would give way and he would then be unfit to do work of any kind, and that he lost in weight the difference between 175 pounds and 145 pounds. He was treated by appellant's physician for several months at the mines from which place he was moved to Artemus where he received no treatment and did no labor. He remained at Artemus but a short time and then went to Bell Jelico where he did not labor and was confined to his room for about four months and was treated by Dr. Corum, the physician of the Bell Jelico Coal Company. He also stated that he hired men

to carry out his contract with appellant; that he would frequently put on his mining clothes and go into the mine to see how his men were progressing, but was not able to and did no work. The company introduced some witnesses who said they saw him go into the mine frequently as though going to work; that they did not discover that he was suffering any. Other witnesses who passed his house often, testified to seeing him and never hearing him complain any. It turned out that McCloud, one of the company's witnesses, had not spoken to Addington for a considerable time prior to his injury; that the other witnesses were barely acquainted with Addington and never conversed with him to any great extent. It seems strange to the court that if the company's contention was true that it did not introduce persons who knew Addington well and were with him frequently for they were the ones who most likely knew his condition. It is also strange that neither appellee nor appellant introduced the physicians who attended him. Neither present any reason as to why they did not do so, but it was shown that appellant's physician was at its mine. Appellee was the first witness to testify. The record is a large one and it took several days to try the case, and it seems that appellee could have introduced the physician to corroborate him in his statement that he had treated him for several months for injuries received in the mine explosion. On the other hand, if appellee's statements with reference to these matters were untrue appellant could have introduced the physician to contradict him. The same is true as to Dr. Corum who, according to appellee treated him at Bell Jelico. Appellant introduced Dr. Biggs who resided at Artemus, to show that he treated a member of appellee's family but did not treat appellee or hear him make any complaint of being injured. Biggs also testified that he came to court with Dr. Corum of Bell Jelico, but Corum was not introduced nor was any reason given for his not being.

If appellee received the injuries and was affected as seriously as he and his witnesses stated, the verdict is not too large, and we do not feel authorized under the circumstances, to disturb the judgment of the lower court, therefore, it is affirmed.