## Employers' Indemnity Company of Philadelphia v. Kelly Coal Company.

(Decided November 21, 1913).

### Appeal from Bell Circuit Court.

Mines and Mining—When Miner Not Independent Contractor—Indemnity Insurance.—A miner who by contract with a coal company gets out the coal in a certain part of its mine at so much per ton or car, who employs his own assistants, but whose employes are kept on the pay roll of the company, and issued scrip by the company, are paid by the company, and are discharged by him whenever requested by the company, is not an independent contractor; and the men working under him are employes of the company within the meaning of that term ·as used in a policy of indemnity insurance.

SAMPSON & SAMPSON, HELM BRUCE and BRUCE & BULLITT for appellant.

METCALF & JEFFRIES for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant insured appellee against claims for damages arising out of injuries to its employes, not exceeding $1,500 to each employe. Carmichael was killed in appellee's mine, and his personal representative instituted an action against appellee for damages by reason of its negligence. Appellee immediately notified the insurance company and called upon it to defend the action which it refused to do, upon the ground that Carmichael was not appellee's employe, and, therefore, not embraced within the terms of the insurance.

Subsequently appellee settled the Carmichael suit for $2,000 and has instituted this action against appellant for the $1,500, and $300 in addition expended by it in defending the Carmichael suit which it was the duty of appellant to do under the terms of the insurance if it was liable.

There is no question made as to the propriety of the settlement with Carmichael's personal representative, or as to the correctness or amount of the attorneys' fees; but it is appellant's sole contention that under the facts of this case Carmichael was not an employe of appellee, and, therefore, it is not liable.

Upon the former appeal in this case (149 Ky., 712) there was involved only a question of the sufficiency of

appellant's answer, and it having been determined on that appeal that its answer was sufficient, upon the return of the case the pleadings were made up, a trial had, and a verdict and judgment for $1,800 on behalf of appellee entered. From this last judgment this appeal is taken.

The facts are that appellee operated its mines chiefly through one McBrayer, its mine foreman, and through him entered into a verbal contract with one Ramsey, whereby it was agreed that Ramsey was to get out coal from a certain part of appellee's mine, and deliver the coal to a sidetrack, and keep up a certain part of the entry, at the price of seventy cents per car. The part of the mine from which Ramsey was to take the coal included the entry and six or eight rooms; and he was to lay his own track, prop the rooms and remove the slate, and the company was to furnish the cars and mules and feed them; but the right was reserved to the mine foreman upon behalf of the company to see that the work was done according to the rules of the company, and to protect the property of the Company, and the work was to be done so as to meet all legal requirements of the company. While Ramsey was to employ his own men and immediately supervise their work, it was all to be done under and within the rules of the company; they were to be paid through the company, but the sums so paid them were to be charged to Ramsey on the books of the company and deducted from his compensation. According to the evidence there was no stipulation in the contract as to whether the company should have the right to discharge Ramsey's men. Carmichael's time was kept on Ramsey's time book; it was turned into the book-keeper at the company's office; was carried on the monthly payroll of the company in Carmichael's own name; he drew script from the company in his own name, and on his own credit, which he used at the company's store in exchange for merchandise, and when pay-day came if any balance was due him it was paid to him by the company directly; evidently the men working under Ramsey looked to the Company for their pay.

While as said above it was not expressly stipulated in the contract between the coal company and Ramsey that the company might discharge Ramsey's employes, it is in evidence that upon at least two occasions while Ramsey was working under the contract two of his employes were discharged either directly by McBrayer, the

foreman, or by Ramsey at the direction of McBrayer. Carmichael prior to his employment by Ramsey had been an employe in appellee's mines, and had had some trouble with McBrayer; and when Ramsey, knowing this, desired to employ Carmichael he declined to do so until he had procured McBrayer's consent; and later when he desired to put Carmichael to driving the company's mules he again procured McBrayer's consent that he might do so.

It is in evidence that for a number of years 90 per cent of the coal mines in that section of Kentucky has been mined and paid for either by the ton or by the car, and that very few hands are hired in the mines by the day to dig coal.

Under the terms of the policy the basis of the premium to be paid the Indemnity Company was the earnings of all the men employed at that mine, including Carmichael and all others employed by Ramsey.

The opinion of this court on the former appeal defined what an employe was, and the court below upon the last trial gave the following definition of employe, which is in accord with the former opinion, to-wit:

"The word 'employe,' as used in this instruction, is defined to be and means a person who works for pay, under the control of his employer, the said employe being at the time subject to the orders of his employer and liable to be discharged by him for disobedience of orders or misconduct."

The former opinion settled the law of this case as to what constituted an employe; its directions were accurately and concisely followed by the lower court, and the jury under that instruction has found that Carmichael was an employe of appellee; and we may say, after a careful reading of the evidence, that they were not only justified in so finding, but that a finding to the contrary would have been against the weight of the evidence. It is clear from the evidence that under the contract the mine boss had the right, and actually exercised the right, either to discharge or require Ramsey to discharge any of the latter's employes whenever he saw fit.

In Interstate Coal Company v. Trivett, 155 Ky., 795, Trivett applied to the mine boss for work, who referred him to Hill who was getting out the coal in certain rooms in the mine and loading it on the cars. Trivett went to work for Hill, and was injured the same day; the

company was sued and this court said in passing upon whether Hill was an independent contractor:

"While Hill was being paid for what he did by the ton, he worked under the direction of the mine boss. A large part of the coal in Eastern Kentucky is gotten out by the miners by the ton, and not by the day. Hill was simply a miner who was getting out coal for the company and being paid according to the quantity of coal he got out. The company furnished the cars and hauled out the coal. Hill loaded the cars after he had gotten out the coal ready to be loaded. Except in the mode of payment Hill in getting out the coal, did just as miners generally do in coal mines. He was not an independent contractor, but a servant whose compensation depended upon the amount of coal he got out; and while he paid Trivett and the other persons who helped him, the pay was simply taken out of his pay."

This is a much stronger case than that; there Trivett's name had never been on the company's books, and he had never been given the company's checks to deal at its store.

Under the facts of this case Ramsey was nothing more than a submine boss whose authority was confined to certain parts of the mine, and whose compensation depended upon the quantity of coal gotten out by him and those under him.

The case of Curvin v. Grimes, 132 Ky., 555, was where the mine owner, Curvin, leased to Cornelius a part of his mine; Cornelius was to hire his own men and operate his part of the mine free from the control of Curvin except that the latter reserved a general supervision over the operation, and Cornelius was to employ no person objectionable to Curvin, and Curvin was to keep an account of the coal, and out of Cornelius' pay was to pay his miners; in substance just such a contract as this. Grimes was an employe of Cornelius and while so acting was injured, whereupon he sued Curvin; Curvin pleaded that Cornelius was an independent contractor, and that Grimes was his employe; and, therefore he (Curvin) was not liable. The court in response to that claim said:

"The evidence shows, without contradiction, that Curvin was in a general sense the operator of the whole mine in which the accident involved herein occurred. He could not, therefore, escape the duty imposed by the statute to see that this mine was ventilated in the man-

ner pointed out, and he could not escape the responsibility for his failure so to do by saying that he had contracted with Cornelius to attend to the necessary bratticing, and that the latter had failed in his duty in regard to it. The men who were working in this mine, whether for Curvin or for Cornelius, saw that ventilation was in the hands and under the operation of Curvin, and they had a right to rely upon his faithful compliance with all the wise provisions of the statute enacted for their safety. Curvin could not, by a verbal contract locked up in the secret bosoms of the parties to it, shift the responsibility for the proper ventilation of the mine to other shoulders.''

The case of Interstate Coal Company v. Baxavenie, 144 Ky., 172, was a coal mining accident case, and it was insisted by the company that the injured employe was not employed by it, but had been engaged by one McCloud to do certain work. In response to that argument the court said:

''It is admitted, however, that appellant was the owner of the mine and had control over it. The statute makes it the legal duty of such owner to comply with its terms. That being true, the owner cannot shift the responsibility imposed by the statute, by resorting to any such contract as that disclosed by the record. If such were the law, the whole purpose of the statute would be defeated. Instead of placing the liability upon the parties having the power and means to safeguard the life of the miner, the burden would rest upon irresponsible parties whose negligence would leave the miner without adequate means of redress.''

These last two opinions are cited and quoted as indicating the policy of the courts not to permit to be effectuated such transparent arrangements, evidently designed to relieve responsible mine owners and operators from certain statutory and other duties they owe their employes.

Judgment affirmed.