## Harlan Gas Coal Company v. Barnett.

(Decided May 13, 1924.)

### Appeal from Harlan Circuit Court.

Mines and Minerals—Employer's Refusing to Furnish Cars to Contractor Digging Coal Justified by Employment of Assistants Without Approval.—Employes of one contracting to dig coal for coal company at certain rate per ton were employes of coal company, and, where rules required that all employes should be approved by superintendent of mine and should sign compensation register, coal company had right to demand discharge of men employed without approval and who had not signed compensation register and to refuse to furnish cars while they were employed.

HALL, JONES & LEE for appellant.

J. G. & J. S. FORESTER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

William Barnett recovered a judgment against the Harlan Gas Coal Company in the sum of $721.61 for an alleged breach of a parol contract, and it has appealed. The parties will hereinafter be referred to as appellant and appellee.

In his petition appellee claimed that on the 27th day of December, 1919, he entered into a contract with appellant by which in consideration of $1.00 per ton he agreed to mine and deliver on the side track, in cars to be furnished by the company, all the coal that could reasonably be mined and removed from its first right entry; that he immediately began work with a crew of hands and up to January 23, 1920, had mined about 500 tons of coal, when he was wrongfully stopped from further work by appellant at a time when he was ready, willing and able to proceed; that over 75,000 tons of unmined coal remained in that entry and under his contract he was making a profit of 15c. per ton for the coal mined and delivered; that by reason of such breach he had been damaged in the sum of $11,250.00.

In its answer appellant admitted the amount of unmined coal claimed in the petition, but denied the contract as alleged and pleaded that appellee was employed to dig coal in the usual way, and at the customary prices; that he and his men were subject to its control and could be discharged at any time; that it had accepted the Workmen's Compensation Act and did not permit anyone to work in its mine unless he did the same. Appellee insisted on working laborers who had not accepted the provisions of that act, and upon its refusal to permit them to labor, he voluntarily ceased to labor and quit. It is also pleaded that the contract claimed could not have been completed within one year and was within the statute of frauds.

Considering the last question, it is highly improbable that appellee could have mined and removed the coal in the described boundary within twelve months, but there was sufficient evidence to submit that issue to the jury, and for reasons to be later discussed it is not necessary to decide if the verdict in this regard is sustained by sufficient evidence.

It is earnestly insisted that a peremptory instruction should have been given in favor of appellant. As bearing upon this question it may be noted that an entire chapter of the Kentucky Statutes is devoted to the subject of mines and mining: It provides for the opening, operation, care, regulation and conduct of mines in general, the primary object of the legislation being the protection of employes.

This court has defined the word "employe" as used in those provisions to embrace all the laborers engaged

in the mine and paid by the operator, whether employed directly by him or employed by an individual getting out coal under contract and employing assistants in such work. In this particular it has been held that an operator is liable in damages for any violation of such law occasioning injury to the *employe.* Interstate Coal Co. v. Trivett, 155 Ky. 795; Employers' I. C. Co. v. Kelley, 156 Ky. 74; Curvin v. Grimes, 132 Ky. 555; Interstate Coal Co. v. Baxavenie, 144 Ky. 172; Big Branch Coal Co. v. Sanders, 159 Ky. 125; Borderland Coal Co. v. Small, 160 Ky. 740; Bon-Jellico Coal Co. v. Murphy, 161 Ky. 452.

Consistent with this, under the Workmen's Compensation Act, employers of more than five men who fail to accept its provisions are denied the common law defenses of contributory negligence, assumed risk and "fellow-servant's negligence." But an injured employe who has not accepted the act may sue at common law subject to common law defenses. (Secs. 4960-4961, Ky. Statutes.)

It will thus be seen that self-preservation requires the operator of a mine such as this to accept the provisions of the Workmen's Compensation Act and to employ only such laborers as have accepted it, and it is established by the evidence that appellant has so conducted its business, and that laborers who cease their employment are required to again sign the acceptance register, and no one is permitted to work in the mines who has not so accepted same.

The general practice at its mine and elsewhere in that section being, when a laborer seeks employment, the mine foreman gives him a slip which he carries to the superintendent; if the superintendent approves the employment he O. K.'s the slip and this is given to the bookkeeper, who registers the laborer as an employe and gives him a number; otherwise he is not accepted as a laborer or permitted to work. Bearing in mind the above legal matters and admitted facts a brief reference may be made to the other evidence.

A son of appellee claims to have been present at the time the contract was made and that afterward he was foreman of the work in the absence of his father, and they both testify that appellee was to mine and deliver all the available coal in the entry mentioned at the rate of $1.00 per ton, this price to be increased if the price of labor advanced; that his laborers were to receive 74½c. a ton for mining and loading, to be paid direct to them; that the company was to furnish powder and a mule and

driver for his cars and pay for same, all of this to be charged to appellee; but it is insisted that the contract gave to the company no supervision or control over appellee or his men, nor the right to determine whom he should employ.

Appellee further says that on the 22nd of January the superintendent refused to haul his coal unless he "fired" some men in his employ; that appellee asked, "Why, what was the matter?" and the superintendent refused to tell him, except that he wanted them "fired." Appellee would not discharge them and the superintendent would not haul any coal while they were there, and they left.

The following day appellee remained with his sick wife and put his son in charge. The latter states that on the 22nd the company refused to permit two of his men to work and that he then procured three others, and the superintendent refused to set cars for them; that "they went back to work on the 23rd and the mine foreman came in and pulled all the cars out." Witness asked him if that meant quit, and the foreman said "yes;" that thereupon he quit and no attempt was made to work further.

The three laborers mentioned formerly worked for the company and accepted the provisions of the Workmen's Compensation Act, but each of them admits that he had theretofore quit and had not thereafter been employed by the company, and that he did not sign the compensation register on this occasion.

Appellee claims that the superintendent did not assign the failure to sign the compensation register as a reason for his demand to discharge these men, and asserts that he made such demand arbitrarily without assigning any reason therefor; however, he admits that he knew the rules of the company and knew that a laborer could only get on the pay roll in the manner indicated above; he claims that he acted as mine foreman and admits that he gave no slips to these men to be carried to the superintendent. Thus, it is clear that he knew that the rules of the company were not complied with in that respect. Indeed, on cross-examination he stated in answer to questions: Q. "You refused to discharge the men when he told you, did you?" A. "Yes, I refused to do it and would do it again." Q. "As you understood the contract and attempted to perform it, you con-

sidered that you had a right to select any men to put in
there, whether they satisfied the management or not?"
A. "Yes, sir, there was nothing said about satisfying
the management when I made the contract." Q. "You
did not care about it, because as you interpreted the con-
tract you thought you had a right to put anybody on
there?" A. "Yes, sir." Q. "You knew the contract
provided that these men were to be paid by the com-
pany?" A. Yes, sir." Q. "Paid direct by the company and
not paid by you?" A. "They were paid by the com-
pany and charged up to me." Q. "Their names were
to go on the pay roll when you turned them in, give their
time or tonnage?" A. "Yes, same as my own." Q.
"They were drawing and had a right to draw under
your contract with McIntosh 74½c. from the company?"
A. "Yes, sir."

Thus it will be seen the chief controversy is as to
whether appellant could exercise the right of approval
or rejection of appellee's assistants. It being also inti-
mated that the superintendent acted arbitrarily in de-
manding a discharge of the men.

Under this contract the laborers assisting appellee
were unquestionably employes of the company in the
sense of the statute, and it is hard to distinguish the
status of appellee from that of any other miner who was
paid so much a ton for mining or for both mining and
carrying on "dead work" with the privilege of employ-
ing assistants. In this respect, where there are estab-
lished rules and regulations in common use and they are
understood by both parties and are entirely consistent
with the agreement, it may be assumed that the contract
was made with reference to such rules and regulations.

True, the agreement claimed by plaintiff was to mine
all of the coal in a particular locality, and if the company
in bad faith arbitrarily refused to accept his laborers in
order to prevent the carrying out of his contract, a dif-
ferent question would be presented, but taking appellee's
evidence as a whole nothing of that sort appears. The
parties to whom the company objected have testified for
appellee and admit they did not sign the compensation
register, and as pointed out above appellee was bound to
have known this fact. On the other hand it clearly ap-
pears that each side was standing on its construction of
the contract.

Appellee was clearly wrong in demanding that men
who had not signed the compensation register be permit-

ted to work. Correspondingly the company was within its rights in refusing to furnish cars so long as those men were thus engaged.

There is no question that appellee ceased to work on this account. In so doing he misconstrued the effect of his contract and the company was not liable therefor.

It follows that a peremptory instruction should have been given, and in view of this the other questions should not have been raised.