## Superior Elkhorn Coal Company v. Allen et al.

(Decided March 27, 1931.)

VINSON & MILLER for appellant.

JAMES & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Superior Elkhorn Coal Company was the owner of a coal mine located near Bosco, on Right Beaver creek, in Floyd county. R. D. Clere was in charge of its mine during the time the transactions involved in this action occurred. In September, 1927, he entered into a contract with Gearheart, Allen, and Allen by which it was agreed that the Superior Elkhorn Coal Company would furnish fuse, powder, dynamite caps, picks, and shovels and all other necessary mining supplies and pay to Gearheart, Allen, and Allen $1.15 and $1.20 per ton for mining

coal. The wages of their employees were to be paid out of this price per ton by the Superior Elkhorn Coal Company, and deducted from the agreed price per ton of the coal, in the settlement between it and Gearheart, Allen, and Allen.

By a mutual agreement, later entered into, the price it was to pay them was increased to $1.20 per ton. Gearheart, Allen, and Allen, in pursuance to this arrangement, employed their miners, began, and continued, to mine coal until, by the contract price, the tonnage amounted to $1,614.13. The company failing to pay them, this action, in equity, was instituted in their names and in the names of the miners so employed and used by them in mining this tonnage, against the Superior Elkhorn Coal Company and the Lackey Mining Company.

In their petition, they allege that they and their miners were the employees of the Superior Elkhorn Coal Company, working for wages, and that at its special instance and request they performed work and labor for it in the mining of its coal, and for which it agreed to pay them, but failed to do so. They allege that defendant had ceased operation of its mine within sixty days, their wages were earned within six months, next before the commencement of this action. The separate wages of each were stated in the petition. They assert a lien on the property of the Superior Elkhorn Coal Company by virtue of section 2487, Ky. Statutes, and aver they have, thereby, a lien to secure their respective claims, aggregating $1,614.13.

In its answer, the Superior Elkhorn Coal Company traversed the allegations of the petition, and by a second paragraph set up and relied on a contract between it and Green Allen, and avers that he was mining coal as an independent contractor, and that the wages sought to be recovered were incurred by him and his employees while he was engaged as such contractor. A reply and amended reply were filed, thus forming an issue. The Lackey Mining Company was dismissed, on motion of plaintiff.

Evidence was taken, and, on submission for trial, a judgment was rendered in favor of each of the plaintiffs for the amount of their respective claims, and a lien allowed to secure their payment, on all of the real and personal property of the Superior Elkhorn Company which is described in the judgment. From this judgment, this appeal is prosecuted.

The appellees insist that it is shown by the evidence that the mining of the coal and the wages thereby earned by the appellees were not done by Gearheart, Allen, and Allen, as independent contractors, nor by Green Allen as such. They insist that, even if they were independent contractors, by section 2487, Ky. Statutes, under the facts alleged and proved, they have a statutory lien on the property of the Superior Elkhorn Coal Company to secure their wages for work done, inside of the mine, owned by it. A summary of the testimony is required to correctly consider and dispose of the questions presented and to be determined.

To get it exact, we prefer to give the questions propounded to answers made thereto by Mr. Green Allen, which are as follows:

"Q. Mr. Allen, what sort of contract did you have with Mr. Clere for mining and delivering the coal into the railroad cars? A. It was only a verbal contract.

"Q. Go ahead and tell what the contract was. A. Well Sam Gearheart, Jim Allen and myself took the contract. Our first contract was $1.15 a ton, I think. I think we worked two weeks at $1.15, something like that, then we were to get a $1.20 a ton. . . .

"Q. The $1.15 and the $1.20 a ton represented the total cost of the coal in the cars to Mr. Clere did it not? A. Yes, that was the price for delivery in the car.

"Q. In other words the only connection Mr. Clere had was to pay you that tonnage and you were to pay the labor and other things incident to putting it into the railroad cars. A. Of course we had to pay for all the cost for what we had to get it mined for and putting it into the railroad car.

"Q. You employed the men to work for you and paid them out of the $1.15 and the $1.20 tonnage that was paid you for loading the coal in the car didn't you? A. He didn't pay us anything. If he had we might have paid something out of it.

"Q. That was the contract wasn't it Mr. Allen? A. That was the contract. That was the man that had to pay for the coal, and if we had collected that we could have paid the men off. . . .

"Q. You were to pay him (George Brown) out of the tonnage which you were to get for loading the coal into the cars were you not? A. Yes sir, we were to pay all labor men. We was to pay them when we received the money for the coal. We couldn't pay without they paid. . . .

"Q. He was to pay $1.15 and $1.20 per ton to you three men on the contract and out of this all the labor that you furnished in producing the coal was to be paid? A. Yes sir, the Superior Elkhorn was the one that was supposed to pay that.

"Q. You don't mean to say Mr. Allen that the Superior Elkhorn was to pay all your labor and in addition to that pay you $1.15 and $1.20 per ton for loading the coal in the car do you? A. $1.15 and $1.20 was what the Superior Elkhorn was supposed to pay.

"Q. Now the figures that are inserted in this suit which are due these plaintiffs is that figured on the basis of $1.15 and $1.20 a ton? A. Yes sir."

The testimony of S. R. Gearheart and Jim Allen is substantially the same as that of Green Allen. R. D. Clere testified that he was the secretary-treasurer and manager of the Superior Elkhorn Coal Company, and that he made a contract with Green Allen by which he agreed to mine and put the coal in the cars for a fixed price per ton; that Allen employed his own men, had control over them, directed when they should go, where they should work, and when they should quit. He claims that the company had advanced to Green Allen and he had been overpaid $1,482.67. The material difference between Clere's version of the contract and that of Gearheart, Allen, and Allen, is, he claims that the contract was with Green Allen, whereas, Gearheart, Allen, and Allen claim it was with the three. Whether it was made with one of the Allens as claimed by Clere, or with the three as claimed by them, the questions to be determined are: (1) Was the mine operated by them or him, as an independent contractor? (2) and, if so, are they and their employees entitled to assert and enforce a lien against the property and effects of the owner of the mine?

The appellees cite and rely on the case of Harlan Gas Coal Co. v. Barnett, 203 Ky. 158, 261 S. W. 1113. They urge that the rule stated in it, even if the work was performed by them as employees of independent con-

tractors, and as independent contractors, that section 2487, supra, when construed with chapter 88, Ky. Statutes (section 2721a-1 et seq.) on mines and mining, gives them a lien against the property of the owner of the mine. In the Harlan Gas Coal Co. case, supra, this language is used:

> "This court has defined the word 'employee' as used in those provisions [chapter 88, Ky. Stat.] to embrace all the laborers engaged in the mine and paid by the operator, whether employed directly by him or employed by an individual getting out coal under contract and employing assistants in such work."

This language was not used in reference to section 2487, supra. It was not there presented, discussed, nor considered by the court.

In chapter 88, Ky. Statutes, on mines and mining (section 2721a-1 et seq.), provisions are found which secure and protect the health, safety, and lives of employees while engaged in mining coal. And many provisions thereof imposed on the owner and operator of the mine duties which cannot be shifted by him or delegated to others by contract or otherwise. Stearns Coal Co. v. McPherson, 144 Ky. 730, 139 S. W. 971; Interstate Coal Co. v. Addington, 149 Ky. 120, 148 S. W. 43; Employers' Indemnity Co. v. Kelly Coal Co., 156 Ky. 74, 160 S. W. 914, 49 L. R. A. (N. S.) 850; Borderland Coal Co. v. Small's Adm'r, 160 Ky. 738, 170 S. W. 8.

But we are cited no section or provision of this chapter conferring on employees of an independent contractor engaged in operating a coal mine a right to assert a lien under section 2487, against the owner of the mine to secure the payment of their wages greater than, or different from, that of the employees of an independent contractor, engaged in any other business comprehended by that section.

In Katz v. Scott, 229 Ky. 738, 17 S. W. (2d) 1024, 1026, section 2487, supra, was presented to us for interpretation. The distinction between a right to a lien of employees of an independent contractor and of an independent contractor himself was pointed out in that case, and we held that "it [section 2487] was intended by the Legislature to be limited only to wages of employees, and not to include amounts due independent contractors for

services and material furnished in carrying out their contract," that the lien authorized by that section was "not for the benefit of an independent contractor, as we have found plaintiff was in this case, but that it was one exclusively for the benefit of the employees of the insolvent operator of the manufacturing establishment (or other undertaking set out in the statute), and existed only as security for their unpaid wages." In that case, we reviewed opinions of the courts of other jurisdictions, which may be examined by the interested reader.

In Raponi v. Consolidation Coal Co., 224 Ky. 167, 5 S. W. (2d) 1043, was presented the question whether the employees of an independent contractor, engaged by contract to remove a "slate dump" by which he was paid by the cubic yard, were the employees of the owner of the coal mine, within the purview of the Workmen's Compensation Law?

In that case the employees signed the compensation register of the coal company and were paid by it for their services, the amount paid being charged to the independent contractor under their contract with the coal company. Our conclusion was that the employees of the independent contractor were not employees of the coal company entitling them to make claims under the Workmen's Compensation Law (section 4880 et seq.) against the coal company and its insurance carrier, even though they had signed such register and had been so paid by the coal company. See, also, Buckhorn Coal & Lumber Co. v. Georgia Casualty Co., 222 Ky. 683, 2 S. W. (2d) 383; Eustler v. Huff, 222 Ky. 48, 299 S. W. 1070; Hatfield Construction Co. v. City of Paintsville, 230 Ky. 750, 20 S. W. (2d) 713; Wright v. Wilkins, 222 Ky. 144, 300 S. W. 342; Dempster Construction Co. v. Tackett, 215 Ky. 461, 285 S. W. 191.

For like and similar reasons, the employees of an independent contractor operating a coal mine are not at the same time employees of the owner of the mine within the meaning and purpose of section 2487, supra, although their work or labor was performed within the mine.

The contract by which Gearheart, Allen, and Allen operated the mine created between them and appellant the relationship of owner and independent contractor, and, although the labor performed by their employees was in the coal mine, they were the operators of the mine within the meaning of sections 2733-1, 2733-2, Ky. Statutes.

"The term 'operator' means any firm, corporation, or individual operating any coal mine, or any part thereof." Section 2723, Ky. Statutes.

By section 2487, supra, only the employees of the operator of a coal mine are given a lien, whether it is operated by the owner or by an independent contractor on the property and effects that may be involved in such operation. The employees of the operator are not given, by it, a lien on the property of the owner of the mine, and vice versa.

This construction of section 2487 is sustained by the language of section 2493, which is as follows:

"The liens provided for in the foregoing section shall in no case be for a greater amount in the aggregate than the contract price of the original contractor; and should the aggregate amount of liens exceed the price agreed upon between the original contractor and the owner or owners of the canal, railroad, turnpike or other improvement, then there shall be a pro rata distribution of the original contract price among said lien-holders."

If, as the owner of the mine, the appellant owed the independent contractors, Gearheart, Allen, and Allen, as per their contract with it, in this event, their employees would be entitled, by the section of the statute supra, to have same applied to the satisfaction of their wages claimed against the contractors to the extent and to the amount of the contract price.

The right to assert and enforce a lien to secure their wages is purely statutory, and the authority for it must be found in the express language of the statute. Hightower v. Bailey, 108 Ky. 198, 56 S. W. 147, 22 Ky. Law Rep. 88, 49 L. R. A. 255, 94 Am. St. Rep. 350; Katz v. Scott, supra.

The appellees insist that there is conferred on them a right to a lien on the property of the owner, because their labor was performed inside the mine, and that the miners who mine coal in the mine are preferred and distinguished by the statute from employees who perform their work outside the mine, and from employees of other independent contractors who engage in other undertakings embraced by section 2487 of the statute. This insistence is untenable. It is not authorized by any phraseology, provision, or section of the statutes relating to the subject matter of liens or mines or mining. No

language is found in section 2487, nor in chapter 88 on mines and mining, conferring on employees of an independent contractor, who perform labor within a mine, a right to assert a lien not allowed such employees working on the outside, or of such contractor engaged in other businesses named in section 2487, supra.

Viewing the evidence in favor of the appellees, and measuring it by the general rule stated in Diamond Block Coal Co. v. Sparks et al., 209 Ky. 73, 272 S. W. 31, and cases cited therein, for determining whether Gearheart, Allen, and Allen were independent contractors engaged in operating appellant's mine, there is no escape from the conclusion that they were, during their operation of the mine, such class of operators. And as such, neither they, nor their employees, have a lien by the express language of section 2487, Ky. Statutes, nor by any provision of chapter 88, supra, on mines and mining, as against the property and effects of the owner of the mine. We cannot extend these statutes beyond their plain language. The right to a lien not being given them, by the statutes, as against the property of the owner of the mine, they cannot assert and enforce it.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.