## Interstate Coal Company v. Trivett.

(Decded November 18, 1913).

### Appeal from Knox Circuit Court.

1. Mines and Mining—Independent Contractor.—A miner who gets out coal by the ton under the direction and supervision of the coal company is not an independent contractor although he pays his own assistants, and their pay is taken out of his.

2. Master and Servant—Infants—Injury to—Parent and Child—Negligence—Distinct Cause of Action.—When an infant is injured by the negligence of the defendant two distinct causes of action arise, one in favor of the infant, and one in favor of his parent, and in such an action by the parent, it is not necessary to allege or show that the infant was employed without the parent's consent, or that the defendant knew that he was an infant.

3. Verdict.—The verdict of a jury finding a settlement fraudulent will not be disturbed on conflicting evidence where the settlement is grossly inadequate.

4. Children—Emancipation—When Will Not Be Presumed.—An emancipation of the child will not be presumed where he left home without the parent's consent, and only a few days had elapsed before he was injured.

5. Master and Servant—Mines and Mining—When Inexperienced Youth May Recover for Injury.—An inexperienced youth who was put to work under a dangerous roof, may recover for his injury in the absence of proof of an explicit warning conveyed to him of the danger.

P. D. BLACK, JAMES D. BLACK and HIRAM H. OWENS for appellant.

J. D. TUGGLE for appellee.

Opinion of the Court by Chief Justice Hobson—
Affirming.

In September, 1910, Charles M. Trivett, who was nineteen years old, was injured by a fall of draw slate from the roof of his working place in the mine of the Interstate Coal Company. Laura Trivett, who is his mother, his father being dead, brought this suit against the company, to recover for the lost services of her son and for nursing and waiting upon him until he was twenty-one years of age. By the fall of the slate he sustained serious and painful injuries resulting in paralysis and a permanent injury to one of his legs. She recovered a judgment for $1,000. The company appeals.

The first question made on the appeal is that Charles M. Trivett was not in the service of the coal company, but was working for one Hill, who was an independent contractor. The facts on this subject are briefly these: Charles M. Trivett applied to the mine boss for work; the boss was not able to give him employment such as he wanted at that time. Hill was getting the coal out of certain rooms in the mine and loading it on the cars at so much a ton, and at the suggestion of the boss, Trivett went to work for Hill at $2.00 a day, to be paid by Hill. It was a part of Hill's duty to take down the draw slate. Trivett went to work in the morning, and on the same day about three o'clock, was injured. While Hill was being paid for what he did by the ton, he worked under the direction of the mine boss. A large part of the coal in Eastern Kentucky is gotten out by the miners by the ton, and not by the day. Hill was simply a miner who was getting out coal for the company and being paid according to the quantity of coal he got out. The company furnished the cars and hauled out the coal. Hill loaded the cars after he had gotten the coal ready to be loaded. Except in the mode of payment Hill in getting out the coal, did just as miners generally do in coal mines. He was not an independent contractor, but a servant, whose compensation depended upon the amount of coal he got out; and while he paid Trivett and the other persons who helped him, the pay was simply taken out of his pay. The mode of payment is not conclusive in cases of this sort as to whether the person is an independent contractor or a servant, although it is a circumstance to be considered with the other facts, and our conclusion is, in view of all the circumstances under which the work was done that Hill

was a servant of the company, and that Trivett was simply working under him. The circuit court properly so held. (See Interstate Coal Co. v. Trivett, this day decided, 155 Ky., 825.)

It is objected that the petition states no cause of action, because it does not aver that Trivett was in the service of the company. The petition states that the company employed her son to shoot down and load coal in one of its mines at Trosper, Kentucky. By the answer this allegation is denied, and it is alleged that the plaintiff's son was not employed by the defendant in any capacity as a servant in or about its mine at the time she alleged he was injured. The affirmative allegations of the answer were denied by a reply, thus making up the issue on this question. If there was any defect in the petition it was cured by the allegations of the answer and reply.

It is also insisted that the petition is insufficient in that it does not show that Trivett was employed without his mother's consent, or that the company knew that he was an infant. But this is not an action against defendant for employing an infant without his parent's consent and thus depriving the parent of his services. It is an action for a negligent injury of the infant. Where an infant is injured through the negligence of another, two distinct causes of action arise; one in favor of the infant for his pain and suffering and the permanent impairment of his power to earn money, after reaching the age of twenty-one years; the other in favor of the parent for the loss of the infant's services until he reaches maturity, and for nursing and taking care of him, and expenses for medicines and medical services. (Akers v. Fulkerson, 153 Ky., 228.) This is an action by the mother, the father being dead, to recover for the negligent injury of her infant son; and the circuit court properly confined the damages to the items indicated. It was not necessary that the mother should allege that her son was employed without her consent or that the defendent knew that he was an infant. She recovers only a part of what the person injured might have recovered if he had not been an infant; and in his separate action the infant may recover for the other items.

In December, 1911, the company paid the mother and son $100 in settlement of the claim; and this settlement was pleaded in bar of the action. The money was tendered to the coal company in the suit by the son, and

paid into court, and this having been done, it was not necessary that it should be paid into court again in this action, the two actions being in the same court and pending at the same time. While the proof as to this settlement is conflicting we cannot say that the verdict finding that the settlement was obtained by fraud, is so against the weight of the evidence as to warrant us in disturbing it. The settlement was so inadequate to the injury received as to raise a presumption against its validity.

The boy lived with his mother until a week before the injury when he left her house in search of work. A few days after this he was hurt; she then came and took him home and took care of him nursing him through many months of painful sickness. There is nothing in the evidence sufficient to show that the mother had emancipated her son; it only shows that the boy not being able to get work where he was, had left his mother's home without her consent in search of work, and a few days afterwards was hurt. While an emancipation may be implied from circumstances, there was no action by the mother here relinquishing her right to her son's services.

While the instructions of the court are long, and the law of the case might have been more briefly stated, we do not find in them substantial error to the prejudice of appellant. The facts of the case are that the room at which the boy was put to work was dangerous; the roof was bad, and this was known to the mine boss as well as to Hill. The draw slate had not been taken down, and the boy, who was inexperienced, was allowed to work under it without warning of the danger. Hill says that he noticed a crack in the draw slate, and told the boy that there was danger of its falling, and that he would go and get a crow bar and take it down; that while he was gone to get a crow bar, the slate fell on the boy. But he says he does not know whether the boy heard what he said before he left him. It was incumbent on him seeing and knowing the danger to inform the boy of it and he should have given the information in such a way as to apprise the boy of the danger. The fact is that the boy not receiving the warning, remained at work, and was hurt by the slate before Hill returned with the crow bar. The boy says that Hill gave him no warning, and his testimony on this subject is not con-

tradicted by Hill; for he says he does not know whether the boy heard him or not. Under the facts of the case, the defendant was properly held liable, and the verdict is not excessive under the evidence.

Judgment affirmed.