## Borderland Coal Company v. Small, Administrator of Bennie Charles.

(Decided November 6, 1914.)

### Appeal from Pike Circuit Court.

.1.  Master and Servant—Helper in Mine.—Where a head miner, employed in mining coal at a fixed price per ton, employs a "helper" or assistant, who is paid by the mine owner out of the money due the head miner, the relation of master and servant exists between the "helper" and the mine owner.

'2.  Mines—Duty to Prop Roof.—Subsection 7 of section 2739b of the Kentucky Statutes, does not impose the duty of propping the roof of a mine upon the miner, or the mine operator; that duty may, by agreement or custom, be imposed upon either the miner or the mine owner.

3.  Practice—Contradicting of Witness by His Deposition.—Under section 597 of the Civil Code, the deposition of a witness taken by the defendant may be read to contradict and impeach the witness who testifies orally upon the trial; but if the oral testimony is not contradicted by the deposition, a refusal of the trial court to permit the deposition to be read is not a reversible error.

4.  Negligence—Assumption of Risk.—A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding misgivings of his own. The servant's dependent and inferior position is to be taken into consideration in determining whether the servant has been guilty of contributory negligence.

5.  Negligence—Assumption of Risk.—Risks incurred under coercion are not assumed.

AUXIER, HARMON & FRANCIS and SHEPPARD, GOODY-KOONTZ & SCHERR for appellant.

ROSCOE VANOVER and M. C. KIRK for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

While working as a miner in the mine of the appellant company, Bennie Charles was instantly killed by a large stone about 20 feet wide, 30 feet long, and 4 feet thick, falling from the roof of the mine upon him. His administrator brought this action for damages, and re-

covered a verdict and judgment for $8,000.00. The company appeals.

At the time of his death Charles was about 21 years of age, and had had an experience of only a few months as a miner. He had formerly worked in appellant's mine for a short time.

Louis Small, an uncle of Charles, was at work in appellant's mine engaged in taking out the stumps and pillars of the mine, at a fixed price per mine car load. On the morning of the accident Charles went to his uncle, who was then at work in the mine, and applied to him for work, saying he had been to other places in the mine and looked over some work, which did not suit him, and that he wished to work for Small. Small employed Charles at $1.60 a day. The company permitted its men to employ "helpers" as was done in this case, it being the custom to notify the mine foreman of such employment; and the man so employed would thereupon be given a numbered check, and his name placed upon the books of the company, where a separate account was kept with him showing the number of cars he had loaded, for each of which he would be given a check, and paid on pay day. Small did not report his employment of Charles at the time, but waited, as seems to have been usual in such cases, to do so at the end of the day's work.

In the room where Small and Charles were at work there was a hill-seam in the roof, of long standing, from which a crack had formed of some two or three inches in width. The roof was of sandstone, and the coal had been taken out several years before, leaving the pillars or stumps. On one side of the crack the roof had sagged from four to six inches, presenting a dangerous situation. There were several props under this rock. When Charles went to work, Small directed him to shovel some loose coal which was on the floor of the mine to a point near the track, where it could be reshoveled into the cars.

While Charles was doing this work under the loose rock, Small was at work on a coal pillar. After Charles had been at work about an hour, Wright, the mine trackman, went into the room and commenced setting a prop under the edge of the loose rock at or near the crack. Wright called Charles to assist him in setting the prop; whereupon Charles dropped his shovel and went to Wright's assistance, holding the prop while Wright fixed the cap on the top of the prop. Wright said the place was dangerous, and this conclusion upon his part seemed

to have led him to put in the extra prop. Wright also testified that he told both Small and Charles to stay out from under the rock because it was dangerous; but the testimony of Small seems to indicate that Wright's statement that the rock was dangerous was made merely in connection with his putting the extra prop in place, and not as a precaution for them to keep away from that place.

After Charles had finished helping Wright set the prop he turned to get his shovel, or to go back to where his shovel had been left, and immediately the rock fell, killing him instantly. Small was near the end of the rock, and succeeded in jumping from under it, while the edge of the rock or the prop that had been set up struck Wright as it went down, without, however, inflicting any serious injury.

The petition asserts that the company was grossly negligent in two respects: (a) in its failure to furnish props and caps for the purpose of propping the roof of the mine, and in failing to prop the roof so as to make it a reasonably safe place in which to work, and (b) in wrongfully taking down props which had been set in said mine near where Charles lost his life.

The answer denied all negligence; pleaded (1) contributory negligence upon the part of Charles; (2) that Small was an independent contractor, and that Charles was the servant of Small and not of the appellant; (3) that Charles asumed the risk of the employment, and (4), that he violated the warning and instruction not to go under the rock.

A general demurrer was sustained to that paragraph of the answer which interposed the plea that Charles was a servant of Small and not of the appellant.

Appellant suggests nine grounds for a reversal, but as some of them are embraced in other grounds assigned, we will content ourselves by disposing of the controlling grounds, without reference to appellant's enumeration. They are, that the court erred, (1) in sustaining the demurrer to the third paragraph of the answer pleading that Small was an independent contractor; (2) in permitting the plaintiff to show it was the custom of the appellant company to do the propping inside of this mine, and to secure the roof for the miners working therein; (3) in refusing to allow the appellant to read in evidence the deposition of Louis Small, who was present and testified upon the trial; (4) in overruling defendant's mo-

tions to direct a verdict for the defendant; and (5) in giving instructions, and in refusing to give an instruction asked by appellant.

1.   The defense that the relation of master and servant did not exist is not well laid.   Although Charles had been employed by Small as his helper, Charles was nevertheless in the service of the company, who not only paid him, but, under the evidence, had the right to discharge him.   It is quite common for head-miners to employ assistants or helpers, who stand in the same relation to the mine owner and the mine boss as the head miner stands.   It is the duty of the mine owner to protect the helpers in every way, and to precisely the same extent, as he should protect the head miners.   In such cases the head miner or workman is not an independent contractor, but a servant whose compensation depends upon the amount of coal he gets out; and while he pays his helpers, their pay is taken out of his pay.   And, where both are subject to the control of the mine owner, as here, they are equally his servants.   Curvin v. Grimes, 132 Ky., 555; Interstate Coal Co. v. Baxavenie, 144 Ky., 172; Interstate Coal Co. v. Trivett, 155 Ky., 795; Employers' Indemnity Co. v. Kelly Coal Co., 156 Ky., 74.

2.   As there was no proof that appellant failed to furnish sufficient props, and ample proof that there was a failure to prop the roof, this feature of the case turned upon the question as to whose duty it was to prop the roof of the room, under sub-section 7 of section 2739b, of the Kentucky Statutes.

The precise question here presented was decided in the late case of Old Diamond Coal Co. v. Denney, 160 Ky., 554, where, in construing sub-section 7 of section 2739b, of the Kentucky Statutes, the court said:

"While sub-section 7 of section 2739b, *supra,* imposes upon the operator of a coal mine the peremptory duty of furnishing to the miner such props and caps as are necessary to make safe the roof of the miner's working place, when request therefor is made, it does not by virtue of its terms, impose the duty of propping the roof upon the miner, or the mine operator.   That duty may, by agreement or custom, be imposed upon either the miner or the mine owner."

The statute does not, as contended by appellant, peremptorily place the duty of propping the roof of the room upon the miners.   That is an issuable fact in each case.

In permitting appellee to show, as he did by several witnesses, that it was the duty of appellant, under the custom of the mine, to prop the roof of the room and keep it safe, and in instructing the jury to the same effect, the trial court was well within the law.

3.  Appellant had taken the deposition of Louis Small in West Virginia some three years before the trial, in which he stated, in substance, that Wright had told Small and Charles to stay out from under the rock— that it was dangerous. It is contended that upon the trial when Small was introduced as a witness by appellee, he undertook to evade that statement, or to modify it substantially; and, to contradict him, and for the purpose of thus impeaching him by showing that he formerly had made a statement different from his testimony at the trial, the appellant offered, by virtue of section 597 of the Civil Code, to read the deposition which Small had theretofore given. The court declined to permit appellant to read the deposition, and it is insisted that this ruling constituted a reversible error.

Section 597 of the Civil Code of Practice provides, in part, that a witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he made statements different from his present testimony.

If Small had, at the time he gave his deposition, made a material statement different from his oral testimony upon the trial, it would have been competent for defendant to contradict him by his own deposition. But the deposition and the oral testimony are both in the record, and they do not contradict each other in the respect pointed out. The appellant cross-examined Small at length, and he substantially stated, not once, but several times, that Wright had told them the roof was dangerous, and to keep from under the rock. As nothing more could have been accomplished by reading the deposition, the error, if any, was certainly not prejudicial to the appellant.

4.  Appellant's contention that it was entitled to a peremptory instruction, proceeds upon the theory that appellee not only failed to prove the relation of master and servant between the appellant and Charles, but that Charles' contributory negligence and assumption of risk in putting himself in a place of danger when it was not only obvious and patent, but after he had been warned to keep from under the rock, absolved appellant from all

liability even though the relation of master and servant existed.

As we have heretofore disposed of the contention that the relation of master and servant did not exist, adversely to appellant, it need not be again considered.

It may be fully conceded that the general rule is, the master is not responsible for a danger which the servant creates in the progress of the work; or where the danger is so obvious and patent that one of ordinary intelligence and observation could perceive it. But that is not the case here. Charles' employment was not to do the hazardous work of making the roof safe; under the evidence in this case that duty was imposed upon the mine owner, who had employed other persons to do it. The mere fact that Wright called Charles from his work to hold up the prop while Wright put the cap upon it, did not place Charles in the position of one who was engaged in making the mine safe. He was not only a young man from 20 to 21 years of age, but he had only had a very few months experience in a mine. No careful person would, under the circumstances, have entrusted so important a duty to an inexperienced boy.

Upon this feature of the case it is difficult to avoid the conclusion that the appellant failed in its duty, to provide Charles with a safe place to do his work. The company can not evade this responsibility by saying the place was obviously dangerous, for that was not true in the ordinary sense. The coal had been removed from under the rock at least two or three years before, some of the witnesses say longer, and the crack had existed in the roof for quite a while. None of these facts relieved the master from its duty of keeping the mine reasonably safe for those not charged with the duty of inspecting or examining for themselves, to ascertain whether or not the place in which they worked was safe. Williams Coal Co. v. Cooper, 138 Ky., 292.

As was said in Dryden v. Pogue Distillery Co., 26 Ky. L. R., 528, 82 S. W., 262:

"A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. If the master directs the servant to do some act which is dangerous, but which could be made less dangerous by the use of special care on the part of the master, the servant has a right to

assume that such special care will be taken, and does not take the greater risk upon himself. The servant's dependent and inferior position is to be taken into consideration, and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed. This, we are glad to say, is now settled law. In short, the law of estoppel applies in such cases. The master is estopped from alleging the falsity of his own representations, unless it appears clearly that the servant did not rely upon them. Yet there are extreme cases in which the danger was so glaring that no prudent man would have entered into it, even under orders. Risks incurred under coercion are not assumed. (Illinois Central R. R. Co. v. Langan, 25 Ky. L. R., 500; Shanks v. Citizens Electric Co., 25 Ky. L. R., 811; Henderson Tobacco Works v. Wheeler, 25 Ky. L. R., 495.)''

The rule of assumed risk was stated as follows, in Ross-Paris Co. v. Brown, 28 Ky. L. R., 815, 90 S. W., 568:

''The rule is, that if inspection is not in the line of duty of the servant, and the defect or danger is not so obvious or patent that the performance of his duties would make it known to him, or in the course of his work and as a natural incident to it, he should know it, he may recover. (Kentucky Freestone Co. v. Magee, 25 Ky. L. R., 2211; Ahrens & Ott Manufacturing Co. v. Rellihan, 26 Ky. L. R., 919, and cases cited.) Whether the servant by ordinary care should have known the danger will depend upon the nature of his duties as well as the nature of the defect and the other circumstances surrounding the servant.''

These questions were submitted to the jury under a proper instruction.

As to these defenses it is sufficient to say there is nothing in the proof to show the danger was so manifest that Charles was not justified in taking the risk of helping Wright put up the prop after Wright had examined the roof, and had called Charles to assist him. Wright's command or request for Charles to assist him was an implied assurance that it was safe for him to do so; at least it was not a notice that it was dangerous. That Charles was ignorant of the danger there can be no doubt. The place was new to him; and, in assisting

Wright by holding up the prop, he was doing only the casual work which his superior in that line had directed him to do. Under such circumstances it can not be said Charles was guilty of contributory negligence, or that he assumed the risk. Central Coal & Iron Co. v. Thompson, 31 Ky. L. R., 276, 102 S. W., 272.

Moreover, the question, under the proof, was one for the jury; and having been submitted under a proper instruction, we see no reason to disturb the finding. Left Fork Coal Co. v. Owens, 159 S. W., 704. The appellee having produced ample proof to sustain each of the issues necessary to a recovery, the trial court was right in overruling appellant's motion for a peremptory instruction, and in submitting the case to the jury.

5. The objection to the instructions is based upon the trial court's disregard of appellant's view of the law of independent contractor, and of the operator's duty to prop the roof. These questions have heretofore been disposed of adversely to appellant's contention.

As the defenses that the court should have entered a judgment for the defendant notwithstanding the verdict, and that the damages were excessive, have not been urged in the brief, but, on the contrary, have been, in effect, withdrawn as untenable, we will not take the time to consider them.

From a careful review of the record, we see no error to the substantial rights of the appellant.

Judgment affirmed.