## Stringer v. York.

(Decided November 19, 1914.)

## Appeal from Bell Circuit Court.

1. Master and Servant—Injury to Servant—Mines—Duty to Prop—Custom of Mine.—While ordinarily it is the duty of the master to furnish the necessary props, and the duty of the miner to prop his own room, yet where a room has been practically worked out, and is used as a roadway for a loaded car to reach the entry, the question whether it is the master's or the servant's duty to prop the roof over the roadway will depend on the custom of the mine.

2. Master and Servant—Injury to Coal Miner—Duty to Prop—Evidence—Question for Jury.—Where plaintiff, a coal miner, was injured by falling slate while working in a room which had been practically worked out and was being used for a roadway, held, that there was sufficient evidence that it was the master's duty to prop the roof over the roadway, and that he had failed to do so, to take the case to the jury.

3. Master and Servant—Injury to Coal Miner—Removal of Props by Miner.—Where the master has propped the roof of the room in which a coal miner is working, and the props are knocked down

by the miner, the miner cannot recover for injuries resulting from falling slate caused by the removal of the props.

N. J. WELLER for appellant.

E. N. INGRAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages for personal injuries by plaintiff, G. T. Stringer, against defendant, I. T. York, the trial court, at the conclusion of the evidence, directed a verdict in favor of the defendant. Plaintiff appeals.

The accident happened under the following circumstances:

The defendant operates a coal mine in Walsend, in Bell County. Plaintiff was in his employ. He was put to work in a room that had been largely worked out. From near the face of the coal where he was at work was a roadway, leading through the room and room neck and out into the entry. Along this roadway the loaded cars were pushed out into the entry. It was plaintiff's duty to push the loaded cars. On April 5, 1912, he was so engaged. The car he was pushing came to a joint in the track about 30 feet from the face of the coal, and while plaintiff and George Hoskins, his bank boss, were trying to get the car over the joint, a piece of slate fell from the roof and broke plaintiff's right thigh bone.

According to plaintiff's evidence, he went to work in the room in question on the Monday preceding the Friday on which he was injured. That portion of the mine had been practically worked out, and plaintiff and his buddy were to finish the work. Plaintiff and his buddy both say that it was the custom in that mine for the mine owner to prop the roof over the roadway. They admit that there were plenty of props there to prop the roof at the place where they were working.

The defendant, who himself was a practical miner, while stating that it was the duty of the miners themselves to see that the roof in the room was properly propped, admits that he propped the roof over the roadway before Stringer went to work, because the men who had been working there had never set any props. The reason he did not require plaintiff to do the work was because plaintiff did not have anything to do with another man's work. On being asked if it was not his duty

to put the room in a reasonably safe condition before putting plaintiff to work, he answered: "It was in reasonably good shape." In answer to the question "Was it not your duty to see that it was kept in good shape," he said: "It was my duty to see that it was propped." He further stated that it was not his duty to look after the top along the roadway. Several witnesses for the defendant also testified that the roof over the roadway was propped all right, but that plaintiff and his buddy moved the track and knocked down the props. This statement was denied by plaintiff and his buddy.

As it is admitted that props were furnished by the defendant, plaintiff would not be entitled to recover if the slate fell from part of the roof where it was his duty, or the duty of his co-workers, to prop the roof. But plaintiff's evidence shows that the slate fell at a point about 30 feet from the face of the coal, and that it was not affected by the work which plaintiff was doing. The defendant himself admits that he propped the roof over the roadway because the miners formerly in the room had failed to do so. He further says that it was not plaintiff's duty to do another man's work. He also practically admits that it was his duty to see that the roof was put in a reasonably safe condition. Ordinarily, of course, it is the duty of the master to furnish the necessary props, and the duty of the miner to prop his own room. Where a room, however, has been practically worked out, and is used as a roadway for loaded cars to reach the entry, the question whether it is the master's or the servant's duty to prop the roof over the roadway will depend on the custom of the mine. Border Land Coal Co. v. Small's Admr., 160 Ky., 738; Old Diamond Coal Co. v. Denny, 160 Ky., 554. If that duty devolves upon the miner, and he is furnished with sufficient props for the purpose, and he is injured by reason of his failure to prop, of course there can be no recovery. On the other hand, if it is the master's duty to do the propping over the roadway, then the miner may recover unless he is guilty of contributory negligence. In view of the positive statement of plaintiff and his buddy that according to the custom of the mine where they were employed it was the master's duty to do the propping, and in view of the defendant's own admission with respect to his duties under the circumstances, it cannot be said as a matter of law that plaintiff was charged with this duty. The question was for the jury.

As before stated, there was considerable evidence to the effect that the roof over the roadway was securely propped, but that in moving the track plaintiff and his buddy knocked the props down. If this be true, there can be no recovery, and the court should so instruct the jury.

There being sufficient evidence to take the case to the jury, it follows that the trial court erred in instructing the jury to find for the defendant.

Judgment reversed and cause remanded for new trial consistent with this opinion.