## Bon Jellico Coal Company v. Murphy.

### (Decided December 8, 1914.)

### Appeal from Whitley Circuit Court.

1. **Master and Servant—Safe Place to Work—Delegation of Duty.—** It is the duty of the master to furnish the servant a safe place to work, and he cannot relieve himself of this duty by delegating it to others.

2. **Master and Servant—Inspection—Contributory Negligence.—**It is not the duty of the servant to inspect the place where he works in the absence of a contract or special assumption of that duty, and his failure to do so is not contributory negligence.

3. **Continuance—Discretion—Evidence.—**It is not an' abuse of discretion to refuse a continuance on account of an absent witness where an affidavit of what he will prove is admitted as evidence.

TYE, SILER & GATLIFF for appellants.

HENRY C. GILLIS, J. B. SNYDER and B. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee was injured by a fall of slate while working in appellant's mine. The third finger of his right hand was cut off, and the second and little fingers were so bruised and lacerated as to leave them permanently stiffened. He sued and recovered a $750.00 judgment. '

In one of the mine entries there was a sag in the floor. In order to fill up this sag and raise the track to grade, appellant contracted with Kilby and Estes, experienced miners, to make the entry three feet wider and shoot down two or three feet of the roof for a distance of about 180 feet, and with this broken down roof it was

planned to raise and level the track to correspond with the normal grade of the entry. Kilby and Estes received pay per ton of coal and yardage for driving the entry. At the time of the accident to Murphy, the slate had been shot down overhead of the original entry, and they had been paid for removing that slate. They were taking coal out from under the three feet of extra width. They had no contract for taking down slate from that part of the work except that, in taking out the coal, it was their duty to either prop or take down the loose slate. If the price could be agreed upon, they expected to make a contract, after taking out the coal, to take down the slate from over it, in order to make that roof conform to the new roof in the original entry.

Coal had been taken out from under this three foot strip for a distance of about 80 feet, and three props had been placed at one end. There is no proof of any other props or support along the whole distance of the new entry, or along the three-foot strip.

Kilby and Estes had employed Murphy as a loader, and he was getting $2 per day. They turned Murphy's name in to the company, and it was carrying him on its books, paying him his wages, less supplies furnished him at the store; but the amount paid to Murphy was deducted from the earnings of Kilby and Estes.

The accident occurred about seven o'clock Monday morning, soon after work commenced. Murphy had loaded one car of coal, and nearly completed another. He was loading this from coal which had been shot late Saturday evening, and Kilby was then picking it down. Murphy was standing on the car track in the mine entry. A large piece of slate, weighing, as some of the witnesses say, from five to seven tons, and from 20 to 30 feet long, fell from over the place where Kilby and Estes had taken and were taking the coal out of the three-foot strip. The bulk of this slate rolled out toward the track, but the break extended overhead into the entry, and one piece, weighing about 40 pounds, fell from immediately over where Murphy was standing. It is not made clear whether that was the piece of slate which struck him.

It is not contended that the danger was such an obvious or patent one as to put a man of ordinary prudence on his guard, nor does appellant insist that Murphy owed any duty to inspect the roof or take any steps to properly secure it. He was merely employed to load coal. In actually digging and mining, he never had altogether

more than two days' experience. But appellant says that Murphy was not its servant. That he was in the service of Kilby and Estes, who were independent contractors; that it was the duty of Kilby and Estes to prop this slate and take it down, and their failure to do so was their negligence and not the company's, and if Murphy is entitled to anything by way of compensation for their negligence, he must look to them, and not to the company.

We are of the opinion that Murphy was appellant's servant, although engaged by Kilby and Estes. Under the facts proven, appellant owed him the duty of exercising ordinary care to give him a reasonably safe place to work, and appellant is not relieved of this duty by delegating it to others. The negligence of Kilby and Estes is virtually admitted, and their negligence is negligence of the company, for which it should respond in damages.

The case of Interstate Coal Company v. Trivett, 155 Ky., 795, is in point. The facts are almost identical, and we quote:

"The first question made on the appeal is that Charles M. Trivett was not in the service of the coal company, but was working for one Hill, who was an independent contractor. The facts on this subject are briefly these: Charles M. Trivett applied to the mine boss for work; the boss was not able to give him employment such as he wanted at the time. Hill was getting the coal out of certain rooms in the mine and loading it on the cars at so much a ton, and, at the suggestion of the boss, Trivett went to work for Hill at $2.00 a day, to be paid by Hill. It was part of Hill's duty to take down the draw slate. Trivett went to work in the morning, and on the same day, about three o'clock, was injured. While Hill was being paid for what he did by the ton, he worked under the direction of the mine boss. A large part of the coal in Eastern Kentucky is gotten out by the miners by the ton, and not by the day. Hill was simply a miner who was getting out coal for the company and being paid according to the quantity of coal he got out. The company furnished the cars and hauled out the coal. Hill loaded the cars after he had gotten the coal ready to be loaded. Except in the mode of payment, Hill, in getting out the coal, did just as miners generally do in coal mines. He was not an independent contractor, but a servant, whose compensation depended upon the amount of coal he got out; and, while he paid Trivett and the other per-

sons who helped him, the pay was simply taken out of his pay. The mode of payment is not conclusive in cases of this sort as to whether the person is an independent contractor or a servant, although it is a circumstance to be considered with the other facts, and our conclusion is, in view of all the circumstances under which the work was done, that Hill was a servant of the company, and that Trivett was simply working under him.''

The same question was raised in Millers Indemnity Company v. Kelly Coal Company, 156 Ky., 74. We there held that one working under similar circumstances was an employe of the company.

The court gave an instruction on contributory negligence in the usual form, but appellant complains that this instruction is erroneous because it fails to point out the ''facts and things,'' as contended by appellant, which constitute contributory negligence on the part of Henry Murphy. Appellant offered an instruction on contributory negligence, which it says the court erred in refusing to give.

That instruction is as follows:

''If you believe from the evidence in this case that the plaintiff either knew, or, by the exercise of ordinary care, could have known, that a shot had been fired at or near the rock or slate which fell upon and injured him, then it was his duty to sound such rock or slate before working adjacent thereto, and, if you should further believe from the evidence that the plaintiff could in this way have discovered that the rock or slate was either loose, dangerous, unsafe or liable to fall and that he failed to do so, then the law is for the defendant company, and you should so find.''

The instruction offered is based upon the idea that it was Murphy's duty to inspect and examine the roof. There is no testimony to that effect, and, in the absence of a contract or special assumption of such duty, it is not incumbent upon the servant to examine or inspect the place where he works. The master is responsible if there is negligence in this regard, unless the danger is patent or obvious. We believe the court's instructions fairly presented the case to the jury, and there was no error in refusing to give the one quoted, which appellant offered.

Neither do we believe the court erred in refusing to continue the case. Appellant presented an affidavit showing what an absent witness would testify if present. The

court permitted this affidavit to be read as the testimony of the witness. It may be that the attorney who made the affidavit was not able to give all the evidence of the absent witness, and it may be the affidavit did not have the force of such testimony if given in person by the witness. But these are not such facts as warrant us in concluding that the lower court was guilty of an abuse of discretion in refusing to continue the case. The circumstances must be extraordinary to take the case out of provision 315 of the Code, which provides that the trial shall not be postponed on account of the absence of a witness if the affidavit shall be read as his evidence.

This case does not come within the rule laid down in Langdon-Creasy Co. v. Rouse, 24 Ky. L. R., 2098, relied on by appellant. The corporation, Langdon-Creasy Company, was sued for damages for personal injury. Mr. Langdon, who was president of the corporation, was the person guilty of the alleged negligence. He bore practically the same relation as a party defendant; and as a party to the action, as well as a witness, his presence was needed. The facts to which he would testify could not be supplied by other witnesses, and his presence was very necessary. His mother died and he could not attend the trial. This court held that it was an abuse of discretion to refuse a continuance under the circumstances. In this case the absent witness, Hiram Estes, was not a party. He went to Tennessee a few days before the trial and was beyond the court's jurisdiction. We cannot say it was an abuse of discretion to refuse a continuance when the statement of what the absent witness will prove is admitted as evidence. Hutton v. First National Bank, 20 Ky. L. R., 225; M. & L. R. R. Co. v. Herrick, 13 Bush, 122.

The judgment of the lower court is therefore affirmed.