# Mountain Central Railroad Company v. Drake's Administrator.

(Decided January 31, 1919.)

## Appeal from Wolfe Circuit Court.

1. Master and Servant—Appliances—Res Ipsa Loquitur.—The doctrine of res ipsa loquitur is not applicable between master and servant unless there is other evidence, however slight, of some negligence of the master; nor would it apply even then where the injured servant was operating and had charge of the defective appliance or contrivance which produced the accident, and whose duty it was to inspect or repair or notify the master of the defects.

2. Master and Servant—Negligence—Appliances.—Before a master can be held liable to his servant there must be some evidence to show negligence on his part, and there can be no negligence without the violation of some duty. Where it is the duty of the servant to inspect and repair the machinery, or notify the master of the defects, the latter is not in fault until he has received such notification, and if the servant fails to inspect or repair or notify the master, and continues to work, he will be deemed to have assumed the risk and can not recover from the master for any injuries sustained.

3. Master and Servant—Assumption of Risk.—A servant was employed to operate a stationary boiler and engine, having complete charge of it. He was an experienced man and had operated the machinery for seven or eight years. Under the terms of the employment he had complete control of it and it was his duty to repair it or to notify the master of necessary repairs. No such notification was given and the boiler exploded, killing the servant. Held that the master was not liable, since the risk was assumed by the servant.

G. C. ALLEN, B. R. JOUETT, S. MONROE NICKELL and A. FLOYD BYRD for appellant.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Mountain Central Railroad Company, is a corporation, and owns and operates a narrow gauged railroad between Campton Junction, in Powell county, and Campton, in Wolfe county, a distance of about fourteen miles. About midway between those points it maintains a water tank to suppy its engines. The tank is supplied with water by a

pump operated by a small, upright, stationary engine. For some seven or eight years prior to December 7, 1915, Alex. Drake, a man about 73 years of age at the time of his death, was employed to and did operate the engine and boiler so as to keep the tank supplied with water, which duties required about three hours of his time two or three times per week. He lived near the pumping station, and operated a small grist mill and ran a small country store. On the day mentioned the pump which carried the water to the tank was out of repair and was being worked on by Drake, after he had fired the engine preparatory to pumping some water, when the boiler exploded and killed him. Appellee, who was plaintiff below, qualified as his administrator and brought this suit against the defendant to recover damages for the death of decedent upon the grounds that defendant had negligently failed to perform its duty in furnishing decedent a reasonably safe place in which to work, and in failing to furnish him reasonably safe machinery with which to do his work.

The answer traversed the allegations of the petition and pleaded both contributory negligence and assumed risk, which were denied, and upon trial there was a verdict in favor of plaintiff for the sum of $1,000.00, upon which judgment was rendered, and complaining of it the defendant prosecutes this appeal.

Numerous grounds are urged for reversal, but the chief one is that the court erred in declining to instruct the jury upon defendant's request to return a verdict in its favor. Since we have concluded that this ground is well taken, it will be unnecessary to enumerate, much less consider, the other grounds relied on.

At the outset it may be stated that under the facts of this case there is no room for the application of the doctrine of *res ipsa loquitur,* since were there no other objection it does not apply as between master and servant unless ther. is some evidence, although slight, of the negligence of the master other than the happening of the accident. L. & N. R. R. Co. v. Allen's Admr., 174 Ky. 736; Wright's Admr. v. Elkhorn Consolidation Coal & Coke Co., 182 Ky. 423, and cases therein referred to. But even for the doctrine to be applied under the circumstances mentioned the accident must have happened because of defects of appliances or machinery not operat-

ed by or in charge or under the control of the injured servant, but operated by or in charge or under the control of the master or some servant other than the injured one and for whose negligence the master would be liable. This limitation of the application of the rule must necessarily follow from the reasons out of which the rule was evolved. They are that the accident being susceptible of no other explanation will be *prima facie* presumed to have resulted from the negligence of the master or of some other servant who had the particular appliance or machinery in charge. No such presumption could arise against the master in favor of the servant who himself operated or who had the defective machinery or appliance in charge, since in that case there would be no greater presumption of the master's negligence than there would be of the injured servant's negligence.

The disposition of this case, then, must depend entirely upon the application of the facts as disclosed by the record to well known principles of law. There is no evidence in the case pointing to any reason for the explosion except it is shown that such an occurrence would hardly happen save in one of two ways—either because of an excessive amount of steam generated in the boiler or by turning cold water in the boiler while it was hot, whereby a very high power gas is produced.

The expert witnesses who testified in the case gave it as their opinion that the particular explosion must have been produced in one of these ways. The plaintiff showed by his proof that the boiler was an old one. Some of the witnesses testified that the flues in it had been in some respects out of repair, but at the request of the decedent, and in his presence, the defendant had repaired them some time before the accident, and there is nothing to show that any complaint was made by decedent concerning them.

It is further shown by plaintiff's evidence that the safety or fusible plug with which some boilers are equipped for purposes of safety was stopped up, and that the opening was not filled with babbet or other safety material as contemplated by the manufacturers. There is no evidence, however, to show how these conditions were created, i. e., whether b ythe defendant, one of its servants, or by the deceased himself, nor is there any

evidence to show that there would have been no explosion had this equipment been in the best of repair.

For the defendant it appears without contradiction that when deceased was employed to manage and operate the pumping plant, which included the engine and boiler, he was given "full charge of the management and operation of the boiler, and was required to and did do all the inspecting and repairing of same and keeping same in proper condition, and such was his contract and nature of his employment."

Thomas Drake, the son of deceased, testified that his father would notify defendant when anything connected with the boiler or any of the machinery under his charge would get out of repair, and defendant would send someone to fix it. Another witness testified that some time before the explosion the deceased told the witness that he had charge of the boiler and did not need the help of anyone else in operating it. In the light of the uncontradicted testimony, there is no escape from the conclusion that under his contract of employment it was the duty of the deceased to inspect and repair the boiler, or to inspect and report to the master any repairs found to be needed. He had made no such report at the time of the accident. Under these conditions the doctrine of the cases of L. & N. R. R. Co. v. Foley, 94 Ky. 226; C. N. O. & T. P. Ry. Co. v. Ashcraft, 116 S. W. (Ky.) 297, and others relied on by plaintiff's counsel, have no application, since in neither of them was the servant under any obligation to inspect or make repairs. The court in those cases applied the ordinary rules of negligence of the master independent of any such duties on the part of the servant. On the other hand, this court has decided in a number of cases that under facts similar to those appearing in this case the master is under no duty to make the machinery or appliances reasonably safe unless he has been requested by the servant to do so and negligently failed to comply therewith. Buey's Admr. v. Chess & Wymond Co., 27 Ky. Law Rep. 198; Harper v. I. C. R. R. Co., 131 Ky. 225; C. N. O. & T. P. Ry. Co. v. Skinner, 143 Ky. 342, and Eagle Coal Co. v. Patrick's Admr. 161 Ky. 333, and cases referred to therein.

In the Buey case, *supra,* the injury complained of was inflicted by alleged defective machinery. The court

found that "It was the duty of Edward F. Buey to report the condition of his machine to the foreman of the shop when it became out of fix. He also repaired it at the direction of the foreman." Further along, in applying the law to the facts this language is used:

"They (masters) cannot actually know the condition of every piece of machinery or tool at every instant of its use. The workman who has it in immediate charge has the best opportunity for learning of such defects as may occur at any moment, and are open to his view. It is his duty to report it so that it can be repaired. If he fails in that duty the master may or may not be liable if some other person is injured by it, but if the neglectful servant himself suffers an injury from it, the master having no knowledge of the situation, it is a safe rule that lets the negligent servant bear the consequences of his own action."

Commenting upon the rights of the parties under such circumstances, the court, in a later part of the opinion, says:

"His (the servant's) familiarity with the machine, and the fact that he had successfully operated it for many years, tends to prove his familiar acquaintance with it, as well as his actions at the time afford evidence of what he knew on the subject of its condition and danger to him." It was finally concluded that as a matter of law decedent's injury and death were the proximate result of his own negligence.

In the Eagle Coal Company case the Buey case is referred to and approved, the court saying: "By the contract of hiring or by mutual understanding or custom, in the absence of a statute, the burden of making such inspection of the working place as the servant is qualified to make may be imposed upon the servant. Buey v. Chess, 84 S. W. 563, 27 R. 198; Old Diamond Coal Company v. Denny, 160 Ky. 554; Borderland Coal Company v. Small, Admr., 160 Ky. 738."

It would seem that those cases are amply sufficient to settle the questions raised by the motion for a peremptory instruction in favor of the defendant. Indeed the doctrine which they announce was applied to facts quite similar to if not identical with the ones we have here. In each of them it was the duty of the servant to inspect and repair, or report to the master

so that he might repair. This, as we have seen, is exactly what this record shows was the duty of the deceased, and we see no escape from the conclusion reached in those cases.

The reason for the foregoing rule relieving the master of liability to the injured servant whose duty it is to inspect and report defects is perfectly apparent. Negligence is the violation of some duty which the party charged with it is under obligations to perform, and necessarily if there is no duty to do the thing compained of there could be no negligence in failing to do it. Kentucky & Tennessee Ry. Co. v. Minton, 167 Ky. 516. The duty of the master to repair, in cases like this, arises only when he· is notified by his servant of the necessity of such repairs, and if the servant fails to give such notice and continues to work, he assumed the risk, and if injured he can not look to the master.

We therefore conclude that because of the error complained of the judgment is erroneous and should be and is reversed for proceedings consistent with this opinion.