## Thomas' Administratrix v. Ashland Fire Brick Company.

(Decided February 24, 1928.)

(Corrected and Rehearing Denied April 24, 1928.)

### Appeal from Carter Circuit Court.

1. Evidence.—In action against owner of clay mine for death of employee's helper, who was employed and paid by employee, testimony that boss stated he would take one of the three men in mine room in which deceased was working to another room, and respecting question asked by boss as to who was paying deceased and answer thereto, held admissible to show that boss, who represented defendant, knew that deceased was working in mine, thereby showing knowledge and consent of defendant.

2. Master and Servant.—In action against owner of clay mine for death of helper employed by employee, who paid helper's wages, exclusion of testimony as to custom of company to permit men to have buddies help them in loading clay and as to witness' knowledge of custom held error.

3. Master and Servant.—That clay mine boss, authorized to assign men to work, knew that deceased was working in room of mine as helper paid by employee, and by his conduct necessarily approved his working there, held sufficient prima facie to show that deceased was there by consent of company, without any proof of custom respecting employment of helpers, so as to create relation of employer and employee between deceased and company.

4.  Master and Servant.—Proof of dangerous condition of roof of room in clay mine, which fell and killed employees working therein, and that company had notice of such condition, held sufficient to go to jury.

5.  Witnesses.—When a witness states that he knows a custom exists, he may be required to state how he knows it before proof by him as to what the custom is may be admitted, and, if the facts stated by him do not show his knowledge of existence of custom, proof should not be admitted, but, where he knows how business is usually conducted, proof may be admitted.

DYSARD & MILLER and T. S. YATES for appellant.

HOWARD VAN ANTWERP, JR., JOHN M. THEOBALD and PRICHARD, MALIN & SMITH for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

The Ashland Fire Brick Company was engaged in the manufacturing of fire brick, and operated, in conjunction with its plant, clay mines which supplied clay for the plant. Among others it had in its employment Will Henderson and Jess Henderson, two brothers who were working on the night shift and loading clay on cars at 5 cents a ton. Will Henderson employed his nephew Virgil Thomas to help him. Thomas was 16 years of age, and went into the mine with Henderson when the night shift went on. The three went to the room assigned them, and Zeke Jones, whom one of the witnesses called the foreman and another witness called the boss, came to the room. Seeing that three men were there and that one was only in the others' way, he took Jess Henderson to another room and put him to work there, leaving Will Henderson and Virgil Thomas to do the work in the first room. About two hours after this, the roof of that room fell and both Will Henderson and Thomas were killed by the falling slate. The evidence shows that the roof had been in a dangerous condition for several days, and that Jones and some other men, long before the roof fell, brought in some props to put under it, but they could not well set the props until the clay that had been shot down was loaded, so they went to another place to work while this was done, and soon thereafter the roof fell. This action was brought by the personal representative of Virgil Thomas to recover for his death. The circuit court sustained a motion for a peremptory instruction to

the jury to find for the defendant at the conclusion of the plaintiff's evidence; the plaintiff appeals.

The defendant had accepted the provisions of the Workmen's Compensation Act, and so had Will Henderson, but Virgil Thomas was not within that act, as he had not signed the register and this was the first time he had been in the mine. The circuit court gave the peremptory instruction upon the ground that the relation of master and servant did not exist. It is urged upon the appeal that the circuit court excluded proper evidence offered by the plaintiff and erred in giving the jury the peremptory instruction. In the testimony of Jess Henderson this occurred:

"Q. Who is Zeke Jones? A. The boss.

"Q. What, if anything, did he say when he came in? A. We had been working a little bit—

"Q. What was you doing? A. Set up and bored one or two holes, I believe two, and the other boys went to loading. When Zeke come in, Will spoke and said to Zeke, said three of us was going to work in there and two of us could load as much as three. (Defendant objects and moved the court to exclude from the jury, which motion is sustained by the court, and the plaintiff excepts and enters the following avowal: It is avowed that, if the witness was permitted to answer he would testify that Will Henderson said to Zeke Jones, the boss, there are three of us in here and two of us can do as much as three; whereupon Zeke Jones, the boss, said he would give one of you a change, or take one out and take you into another room.)

"Q. After Will said what he said to Zeke, what did Zeke say? A. Zeke said he would give one of us a change."

The testimony that Zeke Jones was the boss was sufficient unexplained to show that he represented the defendant and to make *his* knowledge the knowledge of the defendant, and so this testimony was sufficient to show that Virgil Thomas was working in the mine with the knowledge and consent of the defendant. This also occurred on the examination of the witness:

"Q. What did he say? (Objected to by defendant; objection sustained; plaintiff excepts and

enters the following avowal: It is avowed that if the witness was permitted to answer he would say that, when Zeke Jones took him down in the room where he was left to work when taken out of the room where Thomas was, that Zeke Jones asked him who was paying this boy, Virgil Thomas, for his work, and that the witness told him that Will Henderson was paying him.)''

This was competent and should have been admitted for it was confirmatory of the facts stated by the witness, and, if true, was conclusive that the boss was aware that the boy was working there and how employed.

On the examination of Clifford Pelfrey, this occurred:

''Q. Do you know of the custom of the company there permitting its men to have buddies to help them in the loading of clay? (Objected to by the defendant; objection sustained; plaintiff excepts to the ruling of the court and enters the following avowal: It is avowed that if the witness was permitted to answer that he would say he did.)

''Q. What was the custom there of the company with reference to permitting the miners or loaders to have buddies to help them load? (Objected to by defendant; objection sustained; plaintiff excepts and enter the following avowal: It is avowed that if the witness was permitted to answer he would say that it was the custom of the miners and loaders to have buddies to help them load and that it was done with the knowledge and approval and consent of the company.)''

In such matters the custom of the business may be always proved by one who knows it. The proof should have been admitted that it was a custom of the business for a loader to have another to help him load, and this was done with the knowledge and approval of the company. This evidence explained the conduct of Will Henderson and the boss, Jones, who not only made other arrangements for Jess Henderson, so that only two loaders would be in that room, but left Thomas there at work, well understanding that he was there as a helper to Will Henderson. The fact that the boss knew he was there at work and by his conduct necessarily approved his working there was, without any proof of the custom, sufficient

prima facie to show he was there by consent of the company; for the. boss, as shown by the proof, had authority to assign to the men the work they should do.

The rule applicable to these facts is thus stated in 18 R. C. L., p. 577, sec. 83:

> "The rule is well settled that a person who is procured by an employee to act as his substitute or to assist him in his duties, the employer assenting to the arrangement, occupies the position of an employee, and that the duty owed him by the employer is the same as that owed to other employees. And it does not make any difference that the substitute or assistant is promised no compensation for his service. Authority to employ substitutes or assistants may be implied from the nature of the work and also the general course of conducting the business of the employer by the employee for so long a time that consent thereto may be inferred."

In Paducah Box, etc., Co. v. Parker, 143 Ky. 609, 136 S. W. 1013, 43 L. R. A. (N. S.) 179, this court thus stated the rule and the reason for it:

> "When a person who undeniably occupies the relation of servant employs, with the consent and approval of the master, another to assist him in the performance of the duties he is discharging for the master, the relationship of master and servant is thereupon created between the master and the person so employed, although the person so employed may be compensated by and be under the immediate control of the person employing him. The master, by consenting to an arrangement like this, assumes to exercise towards the person so employed the duty that he owes to servants employed by himself. If the rule were otherwise, the master could, by conferring upon a servant the authority to employ, compensate, and control assistants, relieve himself of the ordinary duties imposed by law upon the master by the relation of master and servant."

To same effect, see Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1; Interstate Coal Co. v. Trivett, 155 Ky. 795, 160 S. W. 731; Borderland Coal Co. v. Small, 160 Ky. 738, 170 S. W. 8; Bon Jellico Coal Co. v. Murphy, 161 Ky. 450, 171 S. W. 160; and cases cited.

The proof that the roof was in a dangerous condition, and that the company had notice of this, was sufficient to take the case to the jury on this question, and the evidence that the boy was working where he was with the knowledge and consent of the boss, who understood why he was there, was sufficient to make the master liable if ordinary care was not used for his protection; for the basis of the rule after all is the protection of human life.

When a witness states that he knows a custom to exist, he may be required to state how he knows it before proof by him as to what the custom is may be admitted, and, if the facts stated by him do not show that he knows such a custom to exist, the proof should not be admitted, but, where a man has been several years in the service and knows how the business was usually conducted, the proof may be admitted. The case is here only on the evidence for the plaintiff, and the court only holds now that this evidence standing alone was sufficient to take the case to the jury. No other question is determined.

Judgment reversed, and cause remanded for further proceedings consistent herewith.